COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Beales and Decker
Argued at Salem, Virginia

**PUBLISHED**

MITCHELL LARNELL BENNETT

v.      Record No. 1200-17-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARLA GRAFF DECKER
NOVEMBER 20, 2018

FROM THE CIRCUIT COURT OF AMHERST COUNTY
F. Patrick Yeatts, Judge

Gregory W. Smith for appellant.

Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Mitchell Larnell Bennett appeals his conviction for drug distribution, a third or

subsequent offense, in violation of Code § 18.2-248. He contends that the admission of video

and audio recordings reflecting the drug sale violated his constitutional right of confrontation.

He also challenges the sufficiency of the evidence to prove that he was the seller of the illegal

drugs. We hold that admission of the recordings did not violate his constitutional right to

confront the witnesses against him. We further conclude that the evidence proves the charged

offense. Consequently, we affirm the conviction.

I. BACKGROUND[1]

The challenged conviction arises out of a controlled purchase of illegal drugs made by an

informant on April 28, 2016. The informant died prior to the appellant's trial. Subsequent to the

---

[1] Under the applicable standard of review, we view the evidence in the light most
favorable to the Commonwealth as the party who prevailed below. See, e.g., Riner v.
Commonwealth, 268 Va. 296, 303, 327, 601 S.E.2d 555, 573, 558 (2004).

informant's death, the appellant made a motion to exclude video and audio recordings depicting the controlled purchase, as well as photographs made from the video. The court heard evidence and argument on the motion and denied it.[2] After taking additional evidence, the court found the appellant guilty.

A. Testimony Regarding the Controlled Purchase

Investigators Brandon Hurt, Jason Staton, and James Begley of the Amherst County Sheriff's Office oversaw the controlled purchase. The investigators used a "live" audio feed, which they monitored as the sale occurred. They also made separate audio and video recordings of the transaction, which they were able to review only afterward. All three investigators knew the appellant personally and identified his voice on the audio feed and audio recording. Investigators Hurt and Staton also identified the appellant in the video and photographs made from the video. Additionally, Investigator Begley had known the informant for several years and was "[v]ery familiar" with his "prior work" with law enforcement.

Immediately before the transaction, Investigators Hurt and Staton searched the informant, his cigarette pack, and his motorcycle, and found no contraband. The investigators then equipped him with an audio and video recording device, which was "essentially . . . a cell phone." They listened as the informant made a telephone call in which he spoke to the appellant.

Investigator Hurt confirmed that during the phone conversation between the appellant and the informant, the informant made "reference" to "two funny sticks." Hurt, a narcotics investigator familiar with "lingo" in "the drug trade," explained that this term "referr[ed] to tobacco cigarettes dipped in PCP." He testified further that the informant also mentioned "the whole 3.5," which, in context, meant "an eight ball or three and a half grams of crack cocaine."

---

[2] The court granted the motion in part as it pertained to the audio recording of a conversation that occurred between the informant and the officers after the controlled purchase.

The investigator indicated that based on the conversation, these were the items that he expected the informant to purchase from the appellant. When the phone call ended, Hurt gave the informant $270 with which to buy the drugs.

The informant then rode his motorcycle to a second location. The investigators followed him and confirmed visually that he did not "stop anywhere or do anything" on the way. From the new location, the informant engaged in a second telephone conversation, in which the appellant told the informant where to meet him. The officers followed the informant to the specified location, maintaining visual surveillance until he drove into an apartment complex.

Hurt activated the video recording device remotely. The investigators positioned themselves at the sole entrance and exit to the apartment complex and continued to monitor the live audio feed. Once they heard the informant's motorcycle stop, they noted the informant's and appellant's voices on the audio feed, as well as other unidentified voices.

When Investigator Hurt heard the informant leaving the apartment complex, he remotely stopped the video recording. The investigators then followed the informant to another location, where they took possession of the recording device and two plastic bags containing suspected illegal drugs. The informant also returned $40 to Hurt because he obtained less cocaine than he had sought. After the informant handed over these items, Staton searched him and his motorcycle and found no other drugs or money.

### B. Silent Video Recording of the Drug Transaction

The video recording depicting the in-person transaction was played for the trial court at the motion hearing.[3] It depicts the inside of a residence. A working television is visible as it

---

[3] Investigator Hurt testified that the equipment was working properly. He acknowledged the presence of blank portions in the video but said that they did not indicate a malfunction. Hurt explained that the blanks reflected merely a combination of the location of the cell phone camera, lighting conditions, and the informant's effort to be discreet.

displays a person moving on the screen. The video further shows the informant encountering two different people inside the residence. Fleetingly at the beginning of the video, a woman is visible in the living room. Thereafter, only two men are visible throughout the remainder of the video—the informant and a second man, identified by two of the investigators as the appellant. The video and some of the photographs include the appellant's face and show him holding at least one plastic sandwich bag and two slightly discolored cigarettes.

C. Audio Recording of the Telephone Calls and Drug Transaction

The audio recording, which encompasses two telephone calls between the appellant and the informant as well as the subsequent in-person transaction, was also played for the trial court at the motion hearing.

In the first conversation, the informant tells the appellant that he has "money now" and "want[s] two of them funny sticks" and "a whole three and a half." The appellant responds, "O.k.," to each of the two specific requests for drugs and concludes with, "I gotcha." The two then discuss where to meet. The appellant instructs the informant to give him five to ten minutes, after which the appellant says he will tell the informant where to go. In a second conversation, the appellant says something unintelligible, and the informant responds, "Alright, I'll be right there." The informant then tells the investigators where he is going.

Following the sound of a motorcycle, the informant can be heard in the next portion of the audio greeting another person whose voice the investigators identified as the appellant's. Additional voices or other noises can be heard in the background but not in a way that clearly indicates either any interaction with the informant or appellant, or the presence of people other than as heard through a television. Only portions of the recording of the approximately five-minute exchange are intelligible. Most of what is intelligible appears to be in the informant's voice. The majority of the appellant's comments are indecipherable or not

- 4 -

particularly relevant without their full context. The informant's motorcycle can then be heard again.

### D. Admission of the Silent Video and Audio Recordings

The appellant argued to the trial court that the silent video recording and separate audio recording contained testimonial hearsay because they included hearsay "statements" and were prepared in anticipation of trial. He contended that his rights were violated by their admission because the informant was unavailable and, consequently, he could not dispute their contents, particularly "the blank spaces" in the video, without giving up his right not to testify. He did not otherwise distinguish any particular statements or portions of the video or audio that he contended were testimonial hearsay. The appellant acknowledged that the investigators could "testify to what they saw" and "the statements that they heard from the [appellant]" but argued that "everything else," including "any statements made to [the investigators] by the [informant, were] hearsay." He rejected the notion that the informant's statements were not offered for their truth. In sum, he argued that the video and audio recordings should be excluded in their entirety. He did not object to testimony about what the officers heard over the live audio feed.

The prosecutor responded that the silent video recording did not contain testimonial hearsay. He argued that the appellant's statements on the audio recording were admissible and that the informant's statements were relevant to show "how [the appellant] react[ed] to what the informant [said]" rather than for their truth. The prosecutor further contended that the "entire arc" of conversations was offered to prove that a transaction occurred between the informant and the appellant and that "no evidence [indicated that] the informant interact[ed] with other people" who "might have given [him] the drugs instead of [the appellant]."

The judge ruled that the silent video recording was not testimonial and, thus, that its admission did not violate the Confrontation Clause. In doing so, he noted that the appellant's

argument regarding the blank spaces in the video "[went] to the weight not the admissibility." With regard to the challenged audio, he ruled that the verbal exchanges between the two men also were not testimonial because neither party was "offering testimony about any events" and it was merely "a record of their interaction."

### E. Trial and Sufficiency Arguments

At the request of the parties, the court adopted the evidence presented at the motion hearing as part of the trial evidence. The Commonwealth introduced additional evidence regarding the transaction between the appellant and the informant, including evidence about the contents of the two plastic sandwich bags that the informant turned over to the police following the controlled buy. That evidence established that one of the bags contained cocaine and the other contained two discolored tobacco cigarettes laced with phencyclidine, also known as PCP.

The appellant made a motion to strike the evidence. The judge denied the motion and found the appellant guilty. He stated that the video and photographs of the drug transaction bolstered the officers' testimony identifying the appellant in the telephone conversations and controlled purchase transaction by voice. The judge emphasized that the informant received "essentially" the same drugs in the same amounts that he had ordered over the telephone. The judge also noted that the video "clearly show[ed] the [appellant] with sandwich baggies" and "cigarettes with some sort of substance appearing to be on th[em]."

The court convicted the appellant of the April 28, 2016 offense and sentenced him to twenty years in prison, with ten years suspended.[4]

---

[4] The judge acquitted the appellant of a similar offense alleged to have occurred on May 12, 2016.

## II. ANALYSIS

The appellant argues that the admission of the video and audio recordings violated his right to confront the witnesses against him under the Sixth Amendment to the United States Constitution.[5]  He also contends that the evidence was insufficient to support his conviction.

### A.  Admission of the Silent Video and Audio Recordings under the Confrontation Clause

The appellant contends that the admission of both the silent video and audio recordings violated the Confrontation Clause.  The assignment of error encompasses the photographs made from the video recording but does not challenge the investigators' testimony about what they heard on the live audio feed.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion."  Adjei v. Commonwealth, 63 Va. App. 727, 737, 763 S.E.2d 225, 230 (2014) (alteration in original) (quoting Beck v. Commonwealth, 253 Va. 373, 384-85, 484 S.E.2d 898, 905 (1997)).  Of course, an error of law, "by definition," constitutes an abuse of discretion.  Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).  "Although we will not disturb on appeal decisions regarding the admissibility of evidence absent an abuse of the trial court's discretion, we review *de novo* whether a particular category of proffered evidence [implicates the Confrontation Clause]."  Caison v. Commonwealth, 52 Va. App. 423, 434, 663 S.E.2d 553, 559 (2008) (citation omitted).  In conducting *de novo* review of a legal issue, the appellate court defers to any factual findings underpinning it, including the credibility of the witnesses, and may reverse them only if they are

---

[5] The appellant, in his petition for appeal, challenged the admission of the video on authentication grounds, but this Court held that he failed to preserve that challenge below and the ends of justice exception to Rule 5A:18 did not apply.  Consequently, authentication is not in issue.

plainly wrong.  See Lynch v. Commonwealth, 46 Va. App. 342, 348-50, 617 S.E.2d 399, 402-03 (2005), aff'd, 272 Va. 204, 630 S.E.2d 482 (2006).

The Confrontation Clause "mandates that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'"  Wimbish v. Commonwealth, 51 Va. App. 474, 480, 658 S.E.2d 715, 718 (2008) (alteration in original) (quoting U.S. Const. amend. VI).  In the seminal case of Crawford v. Washington, 541 U.S. 36, 68-69 (2004), the United States Supreme Court interpreted the constitutional right of confrontation to apply only to testimonial hearsay.  If evidence is testimonial hearsay, it "is inadmissible unless the [declarant] is unavailable and the defendant had a prior opportunity for cross-examination."  Adjei, 63 Va. App. at 744, 763 S.E.2d at 233.  Consequently, in the context of our analysis here, in order for evidence to be inadmissible on Confrontation Clause grounds, it must be both (1) hearsay and (2) testimonial in nature.[6]  See id.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Va. R. Evid. 2:801(c); see Fed. R. Evid. 801(c).  Hearsay statements are testimonial if they "are the 'sort [that] cause the declarant to be a "witness" within the meaning of the Confrontation Clause.'"  Aguilar v. Commonwealth, 280 Va. 322, 330, 699 S.E.2d 215, 219 (2010) (alteration in original) (quoting Davis v. Washington, 547 U.S. 813, 821 (2006)).

1. Admissibility of the Silent Video Recording and Accompanying Photographs

The appellant argues that the admission of the silent video and accompanying photographs was error because it deprived him of the opportunity to "cross examine the witness

_____

[6] To the extent that the parties address the hearsay component of the testimonial hearsay issue on appeal, they rely on state law.  The definitions of hearsay applicable in this case, as noted in the text, are the same under both state and federal law.  Consequently, we need not determine whether state law or federal law governs the analysis of whether the challenged evidence is hearsay.

against him." Although his argument focuses on whether the challenged evidence was testimonial, we hold that the issue turns on whether the contents of the silent video and photographs qualified as hearsay.

A "statement" within the meaning of the rule against hearsay includes not only "an oral or written assertion" but also "nonverbal conduct . . . *intended* as an assertion." Va. R. Evid. 2:801(a) (emphasis added); see Fed. R. Evid. 801(a). Regarding nonverbal conduct, "communicative behavior, such as shaking the head or pointing a finger, will satisfy this definition, whereas walking down the sidewalk and going into a store will not." Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia §§ 15-1[a], 15-7, at 898, 942 (7th ed. 2012); see Stevenson v. Commonwealth, 218 Va. 462, 465-66, 237 S.E.2d 779, 781-82 (1977). Both verbal and nonverbal types of *assertive* conduct fall within the definition of hearsay because they depend for their "value upon the credibility of the out-of-court asserter." See Stevenson, 218 Va. at 465, 237 S.E.2d at 781 (quoting McCormick's Handbook of the Law of Evidence § 246, at 584 (Edward W. Cleary ed., 2d ed. 1972)).

Based on the principle that nonverbal conduct qualifies as a "statement" for hearsay purposes only if it is intended as an assertion, photographs generally do not constitute hearsay. See Bynum v. Commonwealth, 57 Va. App. 487, 491-93, 704 S.E.2d 131, 133-34 (2011). Photographs are admissible under either of two theories: "to illustrate a witness' testimony" or "as an 'independent silent witness' of matters revealed by the photograph." Bailey v. Commonwealth, 259 Va. 723, 738, 529 S.E.2d 570, 579 (2000) (quoting Ferguson v. Commonwealth, 212 Va. 745, 746, 187 S.E.2d 189, 190 (1972)). As the appellant acknowledges, videos are admissible under the same principles. See Wilson v. Commonwealth, 29 Va. App. 236, 238, 511 S.E.2d 426, 428 (1999). This test for admission is an either/or test. See Brooks v. Commonwealth, 15 Va. App. 407, 410, 424 S.E.2d 566, 569 (1992). The content

of the video is admissible *either* to illustrate a witness' testimony *or* to serve as an "independent silent witness" of matters depicted in the video.  See Bailey, 259 Va. at 738, 529 S.E.2d at 579 (quoting Ferguson, 212 Va. at 746, 187 S.E.2d at 190).

A video is admissible as an independent silent witness because, unless the video contains conduct that "is intended [by the actor] as an assertion," the contents of the video simply are not hearsay.  See Va. R. Evid. 2:801(a); Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977) (noting that whether the requisite intent exists is a question of fact); Lynch, 46 Va. App. at 348-50, 617 S.E.2d at 402-03 (explaining the deference afforded a trial court's findings of fact underlying admissibility issues); see also Fed. R. Evid. 801(a); State v. Guttormson, 869 N.W.2d 737, 742-43 (N.D. 2015) (holding that a silent video is not a statement for hearsay purposes and, thus, that its admission does not violate the Confrontation Clause).  Instead, as previously noted, non-constitutional evidentiary principles classify the video as non-hearsay that is sufficiently reliable to permit its admission.  See Bynum, 57 Va. App. at 492, 704 S.E.2d at 13.[7]

Here, the video and photographs made from it were admitted as silent witnesses.  The video does not reflect any actions that could be construed as an assertion.  Consequently, the appellant's Confrontation Clause argument fails, and the trial court did not err by admitting the silent video and photographs into evidence.

---

[7] "When [a] video recording is being offered as an 'independent photographic witness,' or 'silent witness,' *i.e.*, as real evidence, it (like photographs of the same type) may be admitted even though no person has witnessed the matters shown in the recording . . . ."  Friend & Sinclair, supra, § 16-15, at 1155.  Although the proponent of the evidence must furnish "an adequate foundation assuring the accuracy of the process producing" the recording, the issue of authentication, as stated *supra* note 5, is not before the Court on appeal.  See Brooks, 15 Va. App. at 410, 424 S.E.2d at 569 (quoting Ferguson, 212 Va. at 746, 187 S.E.2d at 190); see also Taylor v. Maritime Overseas Corp., 224 Va. 562, 566, 299 S.E.2d 340, 342 (1983) (recognizing that hearsay and authentication are separate objections).

## 2. Admissibility of the Audio Recording

The appellant further challenges the admission of the audio recording of the telephone conversations and controlled purchase on confrontation grounds. This argument also turns on whether the challenged portions of the audio recording are hearsay.

First, as the appellant correctly recognizes, his own statements in the audio recording were admissible against him under an exception to the rule against hearsay. See Va. R. Evid. 2:803(0); McCarter v. Commonwealth, 38 Va. App. 502, 508, 566 S.E.2d 868, 871 (2002); see also Fed. R. Evid. 801(d)(2)(A) (defining the statements of a party opponent as non-hearsay). Additionally, it is axiomatic that the admission of a defendant's own statements does not violate that same defendant's right of confrontation. See United States v. Orm Hieng, 679 F.3d 1131, 1140 (9th Cir. 2012).

Second, an out-of-court statement is not hearsay unless it is "offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c); see Fed. R. Evid. 801(c). Even if an out-of-court statement is testimonial, the statement is not excluded by the Confrontation Clause unless it is offered for the truth of the matter asserted and, consequently, qualifies as hearsay. See Hodges v. Commonwealth, 272 Va. 418, 429-32, 634 S.E.2d 680, 685-87 (2006). In short, if a statement is not offered for its truth, it is not excludable as testimonial hearsay because it is not hearsay at all.

Here, the Commonwealth explicitly offered the informant's recorded statements, made during his telephone conversations and meeting with the appellant, to establish "how [the appellant] react[ed] to what the informant [said]," not for the truth of the content of the informant's statements. Further, the prosecutor specifically argued that the "entire arc" of conversations was offered to prove that a transaction occurred between the informant and the appellant and that "no evidence [indicated that] the informant interact[ed] with" anyone else who

- 11 -

might have given him the drugs. Accordingly, we presume that the trial court considered the informant's statements merely to provide context for the appellant's statements and to establish that the informant and appellant were present together during the relevant period of time. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

Analyzing similar circumstances in Swain v. Commonwealth, 28 Va. App. 555, 507 S.E.2d 116 (1998), a pre-Crawford case, this Court concluded that such statements are not hearsay when offered for the limited purpose of establishing context for the defendant's statements. Id. at 559-60, 507 S.E.2d at 118. In Swain, a police officer overheard a conversation between the defendant and another person, who asked the defendant for a "twenty." Id. at 558, 507 S.E.2d at 117. The officer, in his testimony, repeated the conversation and explained that a "twenty" meant cocaine. Id. On appeal, this Court concluded that the Commonwealth offered the buyer's statement asking for a "twenty" "solely to give context to party admissions" comprising the defendant's part of the conversation. Id. at 560, 507 S.E.2d at 118. Moreover, the buyer's "statement [did] not 'rest[] for its value upon the credibility of the out-of-court asserter'" because it was not offered for its truth and, thus, the safeguards provided by the rule against hearsay were not implicated. Id. (second alteration in original) (quoting Taylor v. Commonwealth, 28 Va. App. 1, 9, 502 S.E.2d 113, 117 (1998) (*en banc*)).

Similarly in the instant case, the Commonwealth offered the informant's statements asking for specific drugs to establish context for the appellant's statements and actions rather than for their truth. Consistent with this rationale, nothing in the record indicates that the trial court considered the informant's statements for their truth. See Angel v. Commonwealth, 281 Va. 248, 269, 704 S.E.2d 386, 398-99 (2011) (applying Yarborough to presume that the trial court considered evidence for the limited purpose for which it was admitted). The trial court's only specific reference to the informant's recorded statements was to note that he asked for

"funny sticks" and "a whole 3.5" or "eight ball" and that was "essentially . . . what he got," referring to the drugs that the informant had in his possession when he returned from meeting with the appellant. Like in Swain, the informant's statements were not offered for the literal truth of whether he wanted the specified drugs or the implication that the informant believed that the appellant was a drug dealer. See Swain, 28 Va. App. at 559-60, 507 S.E.2d at 118. Because the statements were not offered for their truth, they did not constitute testimonial hearsay within the meaning of Crawford.[8] See Hodges, 272 Va. at 428-29, 634 S.E.2d at 685-86 (citing Crawford, 541 U.S. at 59 n.9).

We hold that the informant's statements during the controlled purchase were not hearsay because they were not admitted for their truth and, consequently, their admission did not violate the Confrontation Clause. In light of this ruling, we do not address whether they would have been testimonial if offered for their truth.

### B. Sufficiency of the Evidence

The appellant challenges the sufficiency of the evidence, including the video and audio recordings, to support his conviction. He characterizes the video as "showing the [appellant] holding what appear[] to be two plastic baggies with substances in them." He suggests that the court incorrectly inferred from "th[is] one picture on the video" that the baggies of illegal drugs that the informant turned over to the investigators were the same baggies depicted in the video.

---

[8] Most other jurisdictions considering this issue in the wake of Crawford have reached the same conclusion. See, e.g., State v. Smith, 960 A.2d 993, 1011-12 (Conn. 2008) (observing that "the consensus among the federal and state courts that have considered th[e] question" whether an informant's statements in a recording of his conversation with the defendant constitute testimonial hearsay is that they do not when not offered for their truth). But see State v. Williams, 392 P.3d 1267, 1282 (Kan. 2017) (rejecting the theory that the informant's statements in a controlled purchase were offered to provide context rather than to prove their truth because "[c]ontext has content" and concluding that they constituted testimonial hearsay).

It is well established that when an appellant challenges the sufficiency of the evidence to support a conviction, "we must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The conviction will be disturbed only if plainly wrong or without evidence to support it." Jones v. Commonwealth, 21 Va. App. 435, 442, 464 S.E.2d 558, 561 (1995) (*en banc*) (quoting Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992)). This deferential standard of review "applies not only to the historical facts themselves, but [also to] the inferences from those facts." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). "[U]nder this familiar standard of review, '[a]n appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."'" Dalton v. Commonwealth, 64 Va. App. 512, 525, 769 S.E.2d 698, 705 (2015) (second alteration in original) (quoting Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Williams, 278 Va. at 193, 677 S.E.2d at 282).

Where a controlled purchase of drugs is concerned, "without [the informant's] testimony, the evidence proving that the [drugs] came from the defendant" may be "purely circumstantial." Jones, 21 Va. App. at 441-42, 464 S.E.2d at 561. Nevertheless, under proper conditions, circumstantial evidence is sufficient to support such a conviction. Id. at 440, 442, 464 S.E.2d at 560-61. Circumstantial evidence "is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Ward v. Commonwealth, 47 Va. App. 733, 751, 627 S.E.2d 520, 529 (2006) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). However, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those

that spring from the imagination of the defendant." Id. (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)). "Whether [a] hypothesis of innocence is reasonable is itself a 'question of fact' subject to deferential appellate review." Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004) (citation omitted) (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004)).

In this case, the record makes clear that the informant made advance arrangements for the transaction directly with the appellant. The investigators listened through a live audio feed as the informant placed a telephone call and engaged in a conversation with a man whom the investigators identified by voice as the appellant. During that call, the informant said that he had money and "want[ed] two of them funny sticks" and "a whole three and a half," which Investigator Hurt later explained meant PCP-dipped cigarettes and 3.5 grams of crack cocaine. The appellant responded, "O.k., I gotcha," language that conveyed a clear understanding of the informant's request and allowed for the inference that the appellant could provide the informant with the illegal drugs named. The informant then asked the appellant where to go, and the appellant replied that he would talk to the informant again in five to ten minutes to finalize the location. This exchange establishes that the informant lacked advance knowledge of the meeting place. This lack of knowledge, in turn, renders it unlikely that the informant had an opportunity to hide drugs of his own somewhere along the route.

Following a second telephone conversation between the two men, the investigators followed the informant to the specified apartment complex, maintaining visual surveillance until the informant drove into the complex. While the informant was inside the apartment complex, the officers waited at the only entrance and exit as they continued to monitor the live audio feed. After the informant's motorcycle stopped, they heard his voice on the live audio feed as he interacted with someone whom they again identified by voice as the appellant. The investigators

then heard the drug transaction itself live over the audio feed, with all three investigators confirming by voice that the appellant was the person who interacted with the informant. Further, the investigators resumed visual surveillance of the informant immediately upon his departure from the apartment complex to make sure that he did not interact with anyone else.

Before the informant arranged for the buy and left for the designated location, the investigators searched him, along with his cigarette pack and motorcycle, to be sure that he had neither drugs nor money in his possession, and they gave him $270 in cash with which to buy the requested drugs. See Jones, 21 Va. App. at 442, 444, 464 S.E.2d at 562 (noting in part that the investigating officer searched the informant before the controlled buy, gave him money with which to purchase drugs, and found after the transaction that he had cocaine and no longer had the money). Upon the informant's return immediately after he left the apartment complex, he produced two PCP-dipped cigarettes and 2.8 ounces of crack cocaine in separate plastic bags, along with $40 in cash. Law enforcement again searched him to be sure that he possessed no other drugs or money. See id.

Consequently, contrary to the appellant's argument on appeal, the trial court did not infer solely from the fact that "one picture on the video show[ed] the [appellant] holding what appeared to be two plastic baggies with substances in them" that the baggies that the informant turned over to the investigators were the same baggies. The trial court was entitled to rely on the totality of the circumstances. See id. at 443, 464 S.E.2d at 562 (holding that the circumstantial evidence of a drug sale was sufficient to support the defendant's conviction despite the fact that the informant was out of view of the officers as he traveled to and from the location set for the transaction).

The appellant's visible possession of "two plastic baggies with substances in them" in the video, while in the presence of the informant, was only a part of the evidence. The video also

depicts the appellant holding two discolored cigarettes. Those cigarettes closely resemble the PCP-dipped cigarettes that the informant later turned over to the investigators. Further, the trial court accurately characterized what the informant ordered, in his telephone conversation with the appellant prior to the transaction, as "essentially . . . what he got" and then turned over to law enforcement. In addition, significantly, the court heard testimony that the investigators searched the informant before and after the transaction, monitored his movements throughout the relevant period of time, and kept him in view except for the period during which he met the appellant. The testimony also indicated that the meeting took place at a location that the appellant, not the informant, selected and that he made the selection only after the investigators had begun their visual and audio surveillance of the informant, making it virtually impossible for the informant to have obtained the contraband from any other location. See Commonwealth v. Moseley, 293 Va. 455, 465-66, 799 S.E.2d 683, 687-88 (2017) (holding that the circumstantial evidence, viewed in its totality rather than in "fragmented" fashion, permitted a rational fact finder to conclude beyond a reasonable doubt that the defendant committed the charged crimes).

It is true that additional voices were audible in the background while the informant met with the appellant in the apartment. However, after a fleeting view of what appears to be a woman in the living room in the first part of the video, the only people visible in the recording are the informant and the appellant, the person he asked to sell him the drugs. The video also reveals that a television in the residence was on while the informant was there, which readily explains the presence of additional voices. See id. at 466, 799 S.E.2d at 688 (holding that the fact finder "could reasonably reject [the defendant's] theories in his defense and find . . . that [he] was the criminal agent").

Consequently, the only reasonable hypothesis flowing from the evidence, viewed under the proper standard, is that the appellant was guilty of distributing drugs to the informant.[9]

III.  CONCLUSION

We hold that the admission of the silent video recording and photographs did not violate the Confrontation Clause.  Such visual depictions are not hearsay unless they include conduct intended as assertive, and the video does not reflect any actions that could be construed as an assertion.  Regarding the audio recording, we conclude that the informant's statements were not hearsay because they were offered merely to provide context for the appellant's statements and not for the truth of their content.  Finally, we hold that the evidence was sufficient to prove that the appellant distributed illegal drugs, his third or subsequent such offense.  Consequently, we affirm the challenged conviction.

<u>Affirmed.</u>

---

[9] In light of this conclusion, we do not reach the Commonwealth's alternative theory that, even assuming that the record does not exclude the possibility that someone other than the appellant was present at the scene and provided the drugs, the evidence supports a finding that the appellant was at least a principal in the second degree to the distribution because he arranged the transaction in advance and was clearly present supporting the distribution while it occurred. See generally Code § 18.2-18 (providing that one who acts a principal in the second degree to a felony "may be indicted, tried, convicted[,] and punished in all respects as if a principal in the first degree").