COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Causey
Argued at Salem, Virginia

BRIANNA MICHELLE TIPTON

v.      Record No. 0635-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE DORIS HENDERSON CAUSEY
DECEMBER 6, 2022

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

(Elmer Woodard, on brief, for appellant). Appellant submitting
on brief.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial in the Pittsylvania County Circuit Court, appellant Brianna Michelle

Tipton appeals her conviction of felony homicide, in violation of Code § 18.2-33. Tipton argues

that the trial court abused its discretion in admitting certain photos, videos, and statements at trial.

For the reasons below, we affirm Tipton's conviction.

BACKGROUND

The victim, Eileen Myers, was admitted to the hospital with severe wounds and injuries in

April 2020. She was "frail and thin," had multiple "pressure ulcers" on her body, and smelled of

decomposition. Myers was transferred to a rehabilitation center for further care and remained there

until her death in July 2020 from "bacteremia, dehydration[,] and chronic malnutrition." Adult

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

Protective Services ("APS") investigated the matter, taking pictures of Myers's wounds, and Tipton was criminally charged for Myers's death.

Tipton was paid by a self-directed home care program[1] to help take care of Myers, her maternal grandmother. They lived together, along with Tipton's mother, who is Myers's daughter, in a house. Myers had her own room on which Tipton and Tipton's mother put a lock. Tipton testified that the lock was necessary because Myers used to "wander out" of her room.

In June 2020, investigators executed a search warrant of their residence. The house smelled of urine, feces, and trash. The Commonwealth introduced testimony about the condition of the house based on investigators' observations during execution of the search warrant. The Commonwealth also introduced bodycam footage from the search and photos taken during the execution of the search warrant. The investigators' testimony, statements made in the bodycam footage, the footage itself, and photos taken of the house showed that there were large amounts of feces, including animal feces, in several areas of the house. An investigator testified that in Myers's room, there was a medical potty that contained feces and maggot larvae. Also found on the floor in Myers's room were dead flies and larvae, and feces were found under the bed.

At trial, the forensic pathologist who conducted Myers's autopsy testified that Myers's cause of death was "bacteria in the blood stream, which should not be there." She also explained that Myers had colon and intestinal bacteria in her bloodstream.

At trial, the Commonwealth sought to admit into evidence the photographs that the APS worker took at the hospital, depicting Myers's wounds. The APS worker testified that she took the photos and that they accurately represented the injuries she saw on that day. On cross-examination, the APS worker could not verify whether the redness depicted in the photographs was accurate.

---

[1] An employee of the program testified that the program "pays people to help take care of" "individuals who are not capable of taking care of themselves."

Tipton objected to the admission of the photos, arguing that the photos should not be admitted because the APS worker could not testify if the color in the photos was accurate. On redirect examination, the APS worker confirmed that, "to the best of [her] recollection," the photos depicted the injuries "how they appeared" when she took the photos, and she denied altering the photos before printing them from her computer. Over Tipton's objection, the photographs were admitted collectively as Commonwealth's Exhibit 5.

The prosecution also sought to introduce other pictures of Myers's wounds that they alleged Tipton's mother had sent to one of the investigators. Tipton objected to the admission of the photos, arguing that the investigator could not authenticate the photos since she did not take the photos and that no evidence showed that Tipton had ever seen the photos. To authenticate the pictures, the prosecution played a video from one of the investigator's bodycam footage. In the footage, Tipton's mother says to the investigator, "the pictures I sent you, that was [sic] the sores she had." At trial, the investigator confirmed that the photos were the ones sent to her by Tipton's mother. The photographs were admitted over appellant's objection as Commonwealth's Exhibit 8.

The jury found Tipton guilty of felony murder and elder abuse. The court granted the Commonwealth's motion to merge the elder abuse offense into the felony murder offense. This appeal follows.

ANALYSIS

Standard of Review

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "Of course, an error of law, 'by definition,' constitutes an abuse of discretion."

*Bennett v. Commonwealth*, 69 Va. App. 475, 485 (2018) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

Admission of Photographs Taken by Investigator and Tipton's Mother

Tipton asserts that the photographs taken by the APS worker, contained in Commonwealth's Exhibit 5, should not have been admitted because they were not properly authenticated. She argues that because the investigator could not verify the color of Myers's wounds from the photographs, her testimony failed to establish that the photographs were a fair and accurate depiction of Myers's injuries.

Tipton also argues that the trial court erred in admitting photographs of Myers's wounds that Tipton's mother had sent to the investigator. Tipton argues that "[t]here is no evidence that [Tipton] had seen the photographs. If [Tipton] had not seen the photographs, [Tipton] had no way of knowing that they might implicate her in a crime." Thus, Tipton seems to argue that it was error to admit the photographs to show that Tipton was aware of the wounds depicted in the photographs.

"The requirement of authentication or identification is a condition precedent to [the] admissibility [of evidence] that is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901. "A photograph which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and . . . it need not be proved by the photographer who made it." *Tirado v. Commonwealth*, 296 Va. 15, 26-27 (2018) (quoting *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000)). "Photographs are admissible under either of two theories: 'to illustrate a witness' testimony' or 'as an independent silent witness of matters revealed by the photograph.'" *Bennett v. Commonwealth*, 69 Va. App. 475, 487 (2018) (quoting *Bailey*, 259 Va. at 738). Argument about the accuracy of a photograph goes to the weight of the photograph, not its admissibility.

*See Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990) ("Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence."); *Bailey*, 259 Va. at 738-39 (holding that, when the opponent of the photographs alleged that the photographs "did not accurately reflect the crime scene at the time the subscribing witness first observed it," "[t]he mere fact that the lighting was different at the time the photographs were taken is not sufficient to render their admission into evidence by the trial court an abuse of discretion").

Here, the trial court did not err in admitting the photographs taken by the APS worker because the photographs were properly authenticated. The APS worker, who took the photographs, confirmed that the photographs accurately represented the wounds. Thus, the investigator properly authenticated the photographs and the trial court did not abuse its discretion in admitting them. Although the APS worker conceded that she could not say whether the colors in the photos were accurate, because the photographs were properly authenticated, any suggestion that the color of the wounds was inaccurate went to the weight of the evidence, rather than to its admissibility.

The trial court also did not err in admitting the photos sent to the investigator by Tipton's mother. These photographs were authenticated by Tipton's mother's statements on the investigator's bodycam footage. In the footage, Tipton's mother says to the investigator, "the pictures I sent you, that was [sic] the sores she had." At trial, the investigator confirmed that the pictures introduced into evidence were the same pictures Tipton's mother had sent to the investigator. Thus, the photos were properly authenticated, and could serve as "an independent silent witness of matters revealed by the photograph." *Bailey*, 259 Va. at 738. Whether Tipton had seen these photographs is a fact supported by statements Tipton made to investigators

acknowledging these photographs. Her statements were recorded on the investigator's bodycam footage that was admitted into evidence, and Tipton did not assign error on appeal to the admission of those statements by her that were on the bodycam footage. Thus, we treat this argument as waived. *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (holding that the appellant waived an argument appellant failed to raise in her opening brief).

<u>Admission Statements Describing House and Bodycam Footage of House</u>

Tipton asserts that the trial court erred in admitting statements about the condition of the house where she and Myers lived. She argues that this evidence "was not relevant" because it relates to the house's condition "outside the time of the alleged offense." She also alleges that the bodycam footage and photos of areas of the house besides Myers's bedroom is irrelevant and should not have been admitted because "there was no evidence that Eileen Myers had been to that area or that that area would have in some way had an effect upon her."

"Generally, a litigant is entitled to introduce all competent, material, and relevant evidence that tends to prove or disprove any material issue in the case, unless that evidence violates a specific rule of admissibility." *Barkley v. Wallace*, 267 Va. 369, 373 (2004). "[E]vidence is relevant if 'it tends to establish a party's claim or defense or adds force and strength to other evidence bearing upon an issue in the case.'" *Id.* (quoting *Breeden v. Roberts*, 258 Va. 411, 416 (1999)).

Here, the trial court did not abuse its discretion in admitting testimony, video footage, statements made in the video footage, and photographs related to the condition of the house when the search warrant was executed. This evidence showed that there was fecal matter in different areas of the house, including Myers's room and in Myers's medical potty. Because the forensic pathologist explained that one cause of Myers's death was that she had bacteria from the colon in her bloodstream—bacteremia, evidence of fecal matter in the house makes it more likely that the condition of the house caused the colon bacteria to enter Myers's bloodstream. Even though the

evidence was about the condition of the house in June 2020, about a month after Myers had last been in the home, this is a short enough time that it is unlikely that the amount of feces found had accumulated within that period. Thus, it is likely that the condition of the house in June 2020 reflects the condition of the house when Myers lived there. Therefore, the evidence about the condition of the house in June 2020 was relevant to show the condition of the house when Myers lived in the home. Additionally, evidence relating to the description of parts of the home besides Myers's room was relevant for showing the cause of her bacteremia. Myers was a resident of the home, and even though she had her own room, it was possible that she had contact with other areas of the house. Additionally, there was testimony that Myers used to wander out of her room and locks were placed on her door to keep her from wandering. Tipton also lived in the house, and the jury could infer that Tipton's neglectful actions led to the condition of the home and that this condition contributed to Myers's death, a material issue in the case. Thus, we hold that all of the evidence was relevant, and the trial court did not err in admitting all of it.

CONCLUSION

For the reasons stated above, we hold that the trial court did not abuse its discretion in admitting the photographs of the wounds and the statements, video footage, and photographs related to the condition of the house. Thus, we affirm Tipton's conviction.

*Affirmed*.