PRESENT: All the Justices

TARA ANN BAEZ

v. Record No. 230899

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE TERESA M. CHAFIN
DECEMBER 19, 2024

FROM THE COURT OF APPEALS OF VIRGINIA

In this case, we consider the admissibility of video recorded by a law enforcement officer's body-worn camera. Upon review, we conclude that the circuit court did not abuse its discretion when it admitted the video at issue into evidence over appellant's objection. We further conclude that the video at issue did not implicate the Confrontation Clause. Accordingly, we affirm the judgment of the Court of Appeals.

I. MATERIAL FACTS AND PROCEEDINGS

On May 22, 2020, Officers Massie and Hubbard of the Lynchburg Police Department attempted to stop Tara Ann Baez for speeding around 9:44 p.m. Following a brief pursuit, Baez ultimately stopped her vehicle. Baez was arrested by Officer Massie for reckless driving and eluding law enforcement. Shortly after Baez's detention, Officer File arrived and conducted a canine sniff of Baez's vehicle. Based on the results of the sniff, Officer Massie searched Baez's vehicle and located a brown paper bag containing a glass smoking device. The contents of the smoking device were indicative of crack cocaine.

While Officer Massie searched the vehicle, Officer File searched Baez. In Baez's front pocket, Officer File discovered a folded piece of paper containing a substance that she suspected to be narcotics. Officer File placed the paper and substance in an evidence bag provided by Officer Massie before continuing her search. A field test indicated that the substance was cocaine.

At Baez's trial, during direct examination of Officer Massie, the Commonwealth sought to play video footage recorded by Officer File's body-worn camera to supply her link in the chain of custody of the drugs handed to Officer Massie. Baez objected to playing the video on the grounds that it lacked a foundation and that it was hearsay in violation of the Confrontation Clause. The Commonwealth responded that the video could be authenticated by Officer Massie's testimony that the video clearly and accurately portrayed the scene as it was that evening. The Commonwealth further contended that there was no hearsay issue because it was not offering any statements by Officer File for the truth of the matter asserted. To alleviate potential hearsay issues, the Commonwealth offered to mute the video while it played.

Baez agreed that muting the video "would help the hearsay objection," but she maintained that the video still lacked a proper foundation. Referencing the two traditional theories for admitting video evidence, Baez contended that the Commonwealth could satisfy neither: first, Officer Massie did not personally view the relevant events and thus could not corroborate them to use the video as an illustrative aid to his testimony; and second, the Commonwealth could not authenticate the video as an independent silent witness without providing testimony as to the technical details and creation of the recording. Baez also argued that the video's admission would violate the Confrontation Clause if the recording officer was not present to testify.

The trial court overruled Baez's hearsay and confrontation objections, but it took the objection to foundation under advisement to allow the Commonwealth the opportunity to establish a foundation subject to voir dire. When presented with a still image taken from the body-worn camera footage, Officer Massie could not specify whose camera would have recorded that particular vantage point, but he testified that the image appeared to accurately depict the

night of Baez's arrest. He identified Baez as the individual in a white shirt and yellow shorts and confirmed that he was present at that time, though he was not one of the individuals shown in the still image. The Commonwealth acknowledged that Officer Massie was not visible in the still image, but that he would be seen later in the video collecting evidence from Officer File.

Officer Massie further explained that each officer controls their own body-worn camera, and they have the ability to "turn [the camera] on and off," or even mute it. According to Officer Massie, when a camera is returned to its charger at the end of the day, it "automatically" uploads its recordings "by itself." Individual officers do not have a role in uploading or storing the recordings from their body-worn cameras. Although Officer Massie could not verify why the date and time stamp on the still image showed 1:53 a.m. on May 23, he reiterated that the arrest took place shortly before 10:00 p.m. on May 22. The trial court overruled Baez's remaining objection, finding that Officer Massie's testimony adequately authenticated the video such that it could be used as an illustrative aid to his testimony or as a silent witness.

The video was thereafter played for the trial court. The video shows Officer File conducting her search of Baez's person. At one point in her search, Officer File is seen removing the folded piece of paper from Baez's front shorts pocket. Holding the paper under another officer's flashlight, Officer File unfolds the piece of paper before eventually placing it in an evidence bag. Officer Massie identified himself as the officer approaching Officer File with the evidence bag to collect the folded piece of paper that contained what he described as "two pieces of chunk rock white substance." Officer Massie testified that prior to collecting the evidence, he had observed "parts" of Officer File's search, the extent of which being Officer File and Baez standing beside each other. After Officer File completed her search, she and Officer

3

Massie are then seen field-testing the substance before Officer Massie packaged it for submission to the Department of Forensic Science.[1]

Once the Commonwealth rested, Baez moved to strike the charges against her. The trial court denied the motion to strike, finding that the Commonwealth presented a prima facie case to support both charges of eluding and possession of cocaine. After a brief examination of Officer Hubbard regarding the chain of custody for the cocaine, Baez rested and the trial court heard closing arguments, during which Baez renewed her motion to strike. The trial court denied the motion and proceeded to judgment. Baez was found guilty of possession of cocaine.[2]

Upon receiving a presentencing report, the trial court set aside Baez's conviction. The trial court instead withheld a finding of guilt and deferred a disposition pursuant to Code § 18.2-251, subject to a twelve-month period of good behavior and supervised probation. Baez thereafter violated the terms of her probation, and the trial court entered a finding of guilt. Baez was sentenced to two years of incarceration, all suspended on terms of good behavior and supervised probation.

Baez appealed her conviction to the Court of Appeals, presenting the same arguments she made at trial regarding the admission of Officer File's body-worn camera video.[3] The Court of Appeals affirmed the trial court's decision to admit and play the video. Citing its decision in *Bennett v. Commonwealth*, 69 Va. App. 475 (2018), the Court of Appeals rejected both of Baez's

---

[1] The certificate of analysis admitted at trial confirmed that the substance found in Baez's pocket was cocaine.

[2] Baez was found not guilty of eluding.

[3] Baez presented additional arguments to the Court of Appeals, but those arguments are not at issue in the present appeal.

constitutional arguments: that the video itself was testimonial hearsay, and that the search depicted in the video was testimonial hearsay. Likening Baez's argument to that in *Bennett* that the video itself was testimonial hearsay, the Court of Appeals in both cases reframed the issue as more appropriately turning on whether the *contents* of the video were hearsay. *See Baez v. Commonwealth*, 79 Va. App. 90, 110 (2023) (citing *Bennett*, 69 Va. App. at 486). In doing so, the Court of Appeals reiterated that the "Confrontation Clause will only be implicated by conduct or actions depicted within the video." *Id.* at 111.

Finding *Bennett* similarly instructive as to how to analyze the video's contents, the Court of Appeals determined that the "video does not depict any conduct by Officer File intended to be an assertion;" rather, "it merely depicts the occurrence of a search conducted by Officer File." *Id.* at 112. Absent an assertion, the Court of Appeals held that there was no hearsay implicating the Confrontation Clause. *Id.* (citing *Bennett*, 69 Va. App. at 488 ("[U]nless the video contains conduct that 'is intended [by the actor] as an assertion,' the contents of the video simply are not hearsay.")).

The Court of Appeals also rejected Baez's foundation argument that even if her constitutional right to confrontation had not been violated, the video was nevertheless admitted erroneously because it was not authenticated. Referring to Virginia Rule of Evidence 2:901 as a "condition precedent to admissibility," the Court of Appeals determined that Officer Massie's testimony provided a sufficient factual basis to authenticate the video under both traditional theories of admissibility regarding videos. *Id.* at 113-14 (quoting Va. R. Evid. 2:901).

Finding no abuse of discretion, the Court of Appeals affirmed the trial court's decision to admit the video footage from Officer File's body-worn camera and upheld the trial court's judgment. This appeal followed.

5

## II. ANALYSIS

As at trial and in the Court of Appeals, Baez contends that it was reversible error to admit and play the video from Officer File's body-worn camera. Baez argues that admitting the video without Officer File being present to testify or to be cross-examined violated Baez's constitutional right to confrontation. She further argues that even if the video's admission did not violate her rights under the Confrontation Clause, the video was nonetheless inadmissible under the Virginia Rules of Evidence. We disagree with both arguments.

### A. BAEZ'S CONSTITUTIONAL ARGUMENT

Baez maintains her twofold constitutional argument. First, she contends that the video itself is testimonial hearsay because body-worn camera footage is a "medium only intended to be used in litigation." Second, she argues that the video's content—specifically Officer File's actions depicted during the search—is testimonial hearsay because those actions are "purposefully memorialized on camera in order to assert the truth of the matter that Officer File searched [Baez], and found [her] in possession of drugs."[4] These constitutional arguments are subject to de novo review. *See Cortez-Rivas v. Commonwealth*, 300 Va. 442, 444 (2022) ("This Court reviews de novo whether the admission of evidence violates a defendant's confrontation right." (quoting *Logan v. Commonwealth*, 299 Va. 741, 745 (2021))).

The Confrontation Clause of the Sixth Amendment of the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The right of confrontation has been interpreted as "applying to

---

[4] The record is not clear and the parties could not confirm whether the video was in fact played with or without audio at trial. The arguments on brief do not identify any verbal statements at issue but instead focus on Officer File's nonverbal actions. Because the argument has been presented this way, we limit our review to the nonverbal conduct depicted in the video.

6

'witnesses' who 'bear testimony.'" *Logan*, 299 Va. at 745 (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)). "'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford*, 541 U.S. at 51 (quotation marks omitted). The Supreme Court of the United States has posited that "even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object." *Id.* at 53.

Thus, the Confrontation Clause's prohibition of "testimonial hearsay" is constrained by "two limits:" a "statement must be hearsay ('for the truth') and it must be testimonial—and those two issues are separate from each other." *Smith v. Arizona*, 602 U.S. 779, 784, 800 (2024). A statement's testimonial character "focuses on the 'primary purpose' of the statement, and in particular how it relates to a future criminal proceeding." *Id*. at 800. "A court must therefore identify the out-of-court statement introduced, and must determine, given all the 'relevant circumstances,' the principal reason it was made." *Id.* at 800-01 (quoting *Michigan v. Bryant*, 562 U.S. 344, 369 (2011)). Finally, the limitation against hearsay means that if a "statement is admitted for a reason unrelated to its truth, . . . the Clause's 'role in protecting the right of cross-examination is not implicated.'" *Id.* at 785 (quoting *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

Before determining whether an out-of-court statement is testimonial, we must first determine whether a statement has been offered to establish or prove some fact. Under the Virginia Rules of Evidence, hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). A statement is either "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended as an assertion." Va. R. Evid. 2:801(a). Thus, to constitute

7

hearsay, which is necessary to implicate the Confrontation Clause, there must be a verbal or nonverbal assertion of fact.

Baez argues that an officer who records themselves while engaging in a search is inherently making an assertion for the purpose of litigation. She suggests that body-worn camera footage is distinct from videos created by other sources, like surveillance cameras, because the body-worn camera is completely within the control of the recording officer. Given the "editorial ability of the recording officer to create their own narrative"—choosing when, how, and what to record—she argues that the video itself should qualify as hearsay. The assertion represented by the existence of the video, according to Baez, is that Officer File appropriately searched Baez and that Baez possessed cocaine.

In arguing as much, however, Baez necessarily relies on the content depicted in the recording to give the video intrinsic assertive significance. Even types of evidence that are plainly assertive by nature, such as affidavits, have been classified as such based on the content within the medium, not the medium itself. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (holding that certificates of analysis are "quite plainly affidavits," which "fall within the 'core class of testimonial statements' covered by the Confrontation Clause because they are "incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" (quoting *Crawford*, 541 U.S. at 51)); *see also Aguilar v. Commonwealth*, 280 Va. 322, 333-37 (2010) (applying the holding of *Melendez-Diaz* by reviewing whether certificates of analysis "contain" testimonial statements). Put simply, a video recorded on a body-worn camera is not *inherently* a testimonial statement that automatically implicates the Confrontation Clause, even if created by law enforcement while engaging in their official duties. Rather, the incidents depicted in the video dictate whether it contains any testimonial statements

8

that are a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *See Melendez-Diaz*, 557 U.S. at 310; *Crawford*, 541 U.S. at 51.

Turning to the contents of the video at issue, the trial court and the Court of Appeals correctly reasoned that nothing depicted in the video's contents was intended to be an assertion of some fact that qualifies as a statement for purposes of the hearsay definition. As observed by the Court of Appeals in its reliance on *Bennett*, "unless the video contains conduct that 'is intended by the actor as an assertion,' the contents of the video simply are not hearsay." *Baez*, 79 Va. App. at 111 (quoting *Bennett*, 69 Va. App. at 488); *see also Stevenson v. Commonwealth*, 218 Va. 462, 465 (1977) (to be hearsay, a person's nonverbal conduct must be "intended by him as an assertion and offered in evidence to prove the truth of the matter asserted"). Understandably, not all nonverbal conduct will rise to this level. *See* Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia §§ 15-1[a], 15-7, at 898, 942 (7th ed. 2012) (differentiating between communicative behavior such as pointing a finger and noncommunicative behavior such as walking down the sidewalk). Assertive intent is necessary for nonverbal conduct to qualify as a statement under our definition of hearsay. *See Stevenson*, 218 Va. at 465.

Baez argues that Officer File's actions constitute intentional communicative assertions: upon finding the folded piece of paper, Officer File "pointedly" stepped back and held up the item toward her camera, "purposefully memorializ[ing]" that she searched Baez and found her in possession of drugs. However, this interpretation of Officer File's actions speculatively assigns meaning to her otherwise matter-of-course behavior. Viewing the evidence in the light most favorable to the Commonwealth, *see Logan*, 299 Va. at 745, the video simply depicts a law enforcement officer's routine practice of a search incident to arrest. After locating an item in

9

Baez's pocket, Officer File turns to hold the folded paper under another officer's flashlight, ostensibly to better view the paper and its contents considering the late hour of the arrest. Having apparently determined that the substance is likely contraband, Officer File places the paper and the substance in an evidence bag so that she can continue her search.

The video objectively supports the trial court's determination that Officer File's actions were not intended as an assertion, and therefore they were not hearsay implicating the Confrontation Clause. The Court of Appeals, then, did not err in concluding that the trial court correctly determined that the Confrontation Clause did not prevent admission of the video. Because we agree that the video does not contain hearsay, we need not address whether the contents are testimonial.[5]

## B. ADMISSIBILITY OF THE BODY-WORN CAMERA FOOTAGE

Notwithstanding this determination, Baez contends that the video was nonetheless inadmissible. The admissibility of photographic and video evidence rests within the sound discretion of the trial court. *See Stamper v. Commonwealth*, 220 Va. 260, 270 (1979); *see also Goins v. Commonwealth*, 251 Va. 442, 459 (1996). In this context, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "[M]atters regarding the admissibility of evidence,

---

[5] "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). "A fundamental and longstanding precept of this doctrine is that 'unnecessary adjudication of a constitutional issue' should be avoided." *Id.* (quoting *Bell v. Commonwealth*, 264 Va. 172, 203 (2002)). As discussed above, a statement must be both hearsay and testimonial to implicate the Confrontation Clause. *See Smith*, 602 U.S. at 800. The conclusion that the video does not contain hearsay is therefore dispositive of this issue as the "best and narrowest grounds available," and we decline to consider whether the video's contents were testimonial.

including underlying factual issues, are solely within the province of a trial court." *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001).

Ordinarily, the admissibility of video footage is governed by the same rules which apply to the admission of photographs. *See Tirado v. Commonwealth*, 296 Va. 15, 26 (2018); *Stamper*, 220 Va. at 271. Photographs and videos are "generally admitted into evidence for two purposes: to illustrate a witness' testimony, and as an 'independent silent witness' of matters revealed by the photograph [or video]." *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000) (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972)).

"A photograph [or video] which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and . . . it need not be proved by the [individual] who made it." *Tirado*, 296 Va. at 26-27 (quoting *Bailey*, 259 Va. at 738); *see also Ferguson*, 212 Va. at 746 (noting the Court's long-established recognition of this theory of admissibility). As a silent witness, or a witness that "speaks for itself," video or photograph evidence is admissible when "[g]iven an adequate foundation assuring the accuracy of the process producing it." *Ferguson*, 212 Va. at 746 (adopting the "independent silent witness" theory of admissibility). The Court in *Ferguson* accepted that "later advancements in the art of photography" and an "increasing awareness of the manifold evidentiary uses of the products of the art" justified recognizing that photographs could serve as an independent witness. *Id.* (quotation omitted). A similar rationale applies to videos.

Baez argues that Officer Massie's testimony was not sufficient to satisfy either theory of admissibility. First, she asserts that Officer Massie is incapable of testifying that the video accurately represents what happened because he did not witness the relevant portions of the search, namely the moment when Officer File found the cocaine in Baez's pocket, and because

11

his testimony about the time of the stop and arrest did not match the time stamp on the video. Second, Baez asserts that Officer Massie did not create the video and could not adequately testify to the process for creating it in order to satisfy the silent witness rule.

As noted by the Court of Appeals, authentication is a threshold issue, the express purpose of which is to establish "that the thing in question is what its proponent claims." Va. R. Evid. 2:901. Focusing the authentication inquiry on one discrete moment is too narrow to bear on the genuineness of the video as a whole, especially so because "no human is capable of swearing that he personally perceived what a photograph [or video] purports to portray." *Ferguson*, 212 Va. at 746.

In terms of videos, it is not necessary that a witness observe or testify to every moment depicted in the video. Rather, it is sufficient for a witness to affirm that the video accurately represents what transpired based on the witness's observations. *See, e.g.*, *Tirado*, 296 Va. at 27 (upon testifying that the recording accurately depicted the interview, "[n]o more evidence was needed to 'support a finding that the thing in question'—here, the recording of the interview—'is what its proponent claims' as required by Rule 2:901"); *Goins*, 251 Va. at 459 (highlighting accuracy of the depiction as the key consideration); *see also Clagett v. Commonwealth*, 252 Va. 79, 87 (1996) (finding a photograph to be sufficiently authenticated by the officer's testimony identifying a distinctive keyring that had been taken from the defendant and photographed at the same time as other evidence); *Wilson v. Commonwealth*, 29 Va. App. 236, 239 (1999) (a proper foundation for video and still images was laid by the victim's "personal, direct knowledge" of the assault when testifying that the video "accurately showed the assault on him as it was occurring").

12

Here, Officer Massie testified to his personal, direct knowledge of the events surrounding Baez's stop and arrest. Officer Massie not only testified that he was present during that timeframe, but he also identified himself in parts of the video. Though he did not see the moment when Officer File removed the cocaine from Baez's pocket, he testified that he did observe them standing together as Officer File searched Baez. Significantly, he affirmed that the video accurately depicted the events that took place during the course of Baez's stop and arrest. While Officer Massie did not create the video, our case law is clear that its accuracy can be affirmed by someone other than the person who made it. *See Tirado*, 296 Va. at 26-27. Further, when confronted about the difference of the date and time stamp, Officer Massie echoed his earlier testimony regarding the date and time that he stopped and arrested Baez.[6] To the extent he lacked an explanation for the difference, such gaps tend to go to the weight of the evidence in question rather than its admissibility. *See Aguilar*, 280 Va. at 333. Officer Massie's testimony was therefore sufficient to support a finding that the "thing in question," being Officer File's body-worn camera footage, "is what its proponent claims" as required by Rule 2:901, and the video was adequately authenticated as an illustrative aid to his testimony.

Officer Massie additionally testified regarding the process of creating the videos recorded by body-worn cameras. He explained that each individual officer can turn their body-worn camera on or off, or mute the audio while recording. He described the process to upload videos from the body-worn cameras as being automatic once a camera is placed on a charger, noting that the officers have no interactive role in uploading or storing the videos. Officer Massie's descriptions of using the body-worn cameras, particularly the binary nature of control and the

---

[6] The Commonwealth argued that the letter "z" following the date and time stamp indicated Zulu Time, which would be "four or five hours ahead" of the local time, depending on daylight saving time.

13

automated upload process, were sufficient in combination with the rest of his testimony to assure the trial court of the "accuracy of the process producing" the video. *See Ferguson*, 212 Va. at 746. His testimony was therefore sufficient for the trial court to determine that the video had been authenticated for use as an independent silent witness as well.

Though *Bennett* seemingly describes the two theories of admissibility as an either/or test, *see Bennett*, 69 Va. App. at 487, we agree with the Court of Appeals that the intended reading is that either theory may serve as an independent basis for authenticating a photograph or video. Our case law does not necessarily preclude the possibility that photographic or video evidence may function both as an illustrative aid to testimony and as an independent silent witness, so long as the proper foundation is laid by sufficient evidence for each basis.

Baez urges that this conclusion begets a "slippery slope" wherein body-worn camera footage will routinely be offered as a substitute for the live testimony of law enforcement in criminal trials. We are confident that our well-settled evidentiary rules of admissibility are sufficient safeguards against such a wholesale possibility. As reasoned by the Court of Appeals, the authentication inquiry is merely one part of the admissibility determination. Other rules of evidence may bear upon the ultimate admissibility of body-worn camera footage, depending upon the purpose for which it is offered. As with the video in this case, objections to videos from body-worn cameras offered into evidence will be examined on a case-by-case basis to determine whether and for what purpose the video may be admitted. This level of individual review ensures the trial court's ability to consider whether a proponent has sufficiently established not only that the video is what its proponent claims to be, but also that it is a relevant and reliable piece of evidence.

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the Court of Appeals.

*Affirmed.*