## Richmond

RAYMOND EARL FERGUSON v. COMMONWEALTH OF VIRGINIA.

March 6, 1972.

Record No. 7784.

Present, Snead, C.J., Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*Edward W. Taylor* (*Hundley, Taylor & Glass,* on brief), for plaintiff in error.

*William P. Robinson, Jr., Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

Raymond Earl Ferguson (Ferguson or defendant) was convicted by a jury in the trial court of forgery and uttering a forged instrument in the amount of $139.23. The court, in accordance with the verdicts, sentenced the defendant to terms of two and three years respectively in the state penitentiary.

The single issue here is whether the trial court erred by admitting into evidence, over the defendant's objection, a "Regiscope" photograph purporting to be that of the defendant.

In the trial court the defendant objected to admission of the photograph on the ground that it had not been properly authenticated or verified. He argued there, as he does here, that a photograph, to be admitted in evidence, must be verified by a witness who has observed

what the photograph purports to show and the witness must affirm that the photograph fairly depicts what he observed.

But this argument overlooks that

> "Photographs, when properly authenticated, are, as a general rule, held to be admissible under two distinct rules—(1) to illustrate the testimony of a witness, and (2) as 'mute,' 'silent,' or 'dumb' independent photographic witnesses . . . ." 29 Am.Jur.2d, *Evidence*, § 785, p. 857.

We have long recognized and admitted photographs in the first category by holding that a photograph which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and that it need not be proved by the photographer who made it. *State Farm Ins. Co.* v. *Futrell*, 209 Va. 266, 163 S.E.2d 181 (1968); *Lawson* v. *Darter*, 157 Va. 284, 160 S.E. 74 (1931).

The facts disclosed by the record here, however, preclude the admission of the photograph in question under this theory for no witness testified that the photograph depicted a scene or event as witnessed by him.

The question, then, is whether we should also admit photographs of the second category, thereby adopting the so-called "independent silent witness" theory of admissibility of photographs. We think that we should for, as is pointed out by Professor Wigmore,

> " . . . With later advancements in the art of photography, however, and with increasing awareness of the manifold evidentiary uses of the products of the art, it has become clear that an additional theory of admissibility of photographs is entitled to recognition. Thus, even though no human is capable of swearing that he personally perceived what a photograph purports to portray (so that it is not possible to satisfy the requirements of the 'pictorial testimony' rationale) there may nevertheless be good warrant for receiving the photograph in evidence. Given an adequate foundation assuring the accuracy of the process producing it, the photograph should then be received as a so-called silent witness or as a witness which 'speaks for itself.' " 3 Wigmore, *Evidence*, § 790, p. 219-20 (Chadbourn rev. 1970).

Having determined that a photograph may be admissible under the silent witness rationale, we must now determine whether the evidence

before the trial court was sufficient to authenticate the photograph here in issue. As was pointed out by Wigmore, the test is whether the evidence is sufficient to provide an adequate foundation assuring the accuracy of the process producing it.

The check which brought about prosecution of the defendant was cashed at a drug store at 1505 Hull Street, Richmond, on February 14 or 15, 1969. John Mills (Mills), the store manager, identified the forged check as one which was cashed in the regular course of business at his store.

Mills testified that his store was equipped with a Regiscope camera and a photograph is made of each check cashing transaction. This camera makes a photograph showing the person who presents the check, the identification presented by that person and the check which is cashed. To accomplish this the check and the identification are placed on the counter at the base of the camera and the person presenting the check is required to stand at the cashier's window where the camera is installed. Each transaction is assigned a number in numerical sequence which is stamped on the check before the photograph is taken. This transaction number, which appears on the photograph of the check as well as the check itself, is used to identify the transaction when a photograph is requested from the Regiscope Company.

Mills, who had placed the film in the camera, removed it after the check was returned by the bank and sent it to the Regiscope Company who processed it. The photograph at issue was received from Regiscope by an employee of Mills' company who delivered it to the police.

Examination of the photograph admitted in evidence discloses that it is approximately 3-½ x 4-½ inches in size. The upper one third of the photograph shows the identification presented and approximately two thirds of the forged check which bears identification number 650700, the same number that appears on the forged instrument. The bottom two thirds of the photograph shows the face and upper body of a man who is wearing a tie, a white shirt and a checked sport coat.

It is our opinion that the evidence was sufficient to provide an adequate foundation assuring the accuracy of the process and we hold that the photograph was properly admitted in evidence.

*Affirmed.*