# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Dexter Layne Poe

August 17, 2015

Case No. CR15-0480

BY JUDGE DAVID W. LANNETTI

This matter came before the Court on August 4, 2015, on several motions that were filed by *pro se* Defendant Dexter Poe and argued at the hearing by Poe with assistance from his stand-by counsel, Laurence Dickerson Bragg, Esq. This Opinion and Order contains the Court's rulings on these motions, as well as on an additional motion filed by Poe after the August 4, 2015, hearing.

## Background

Poe filed several pretrial motions in anticipation of his scheduled August 18, 2015, jury trial for Statutory Burglary, Grand Larceny, Larceny with the Intent To Sell or Distribute, and Obtaining Money or Property by False Pretenses. Specifically, Poe's motions before the Court at the Hearing were as follows: (1) Motion for Bill of Particulars; (2) Motion To Compel Discovery; (3) Motion *in Limine* to "rule as inadmissible the two (2) DeWalt power tools"; (4) Motion To Dismiss Larceny with the Intent To Distribute or Sell; (5) Motion To Suppress Photographs of DeWalt Hammer Drill and DeWalt Grinder Belonging to Paul Wetherbee; and (6) Motion To Suppress All Out-of-Court, In-Court, and Photographic Lineup Identifications Made by Patrick Garvey (with Addendum). Poe filed an additional motion, a Motion To Dismiss Indictment for Statutory Burglary, after the Hearing.

*Rulings*

The Court now considers and rules on the six pretrial motions filed by Poe, which were argued at the Hearing by Poe with the assistance of Mr. Bragg. Based on the impending trial date, as well as the issues addressed at the Hearing, the Court elects to consider the post-Hearing motion without additional argument. During the course of the Hearing, Poe withdrew three of his motions. For the reasons stated herein, the Court denies the remaining three motions argued at the Hearing, as well as the post-Hearing motion.

### A. *Motion for Bill of Particulars*

After argument and a subsequent colloquy between Poe, the Commonwealth's Attorney, and the Court at the Hearing, Poe elected to withdraw his Motion for Bill of Particulars.

### B. *Motion To Compel Discovery*

After argument and a subsequent colloquy between Poe, the Commonwealth's Attorney, and the Court at the Hearing, Poe elected to withdraw his Motion To Compel Discovery.

### C. *Motion in Limine*

After argument and a subsequent colloquy between Poe, the Commonwealth's Attorney, and the Court at the Hearing, Poe elected to withdraw his Motion *in Limine* to "rule as inadmissible the two (2) DeWalt power tools."

### D. *Motion To Dismiss Larceny with the Intent To Sell or Distribute*

Poe argues that his Larceny with the Intent To Sell or Distribute charge should be dismissed because the Commonwealth failed to prove at the preliminary hearing that the value of the items allegedly stolen exceeds $200 as required by § 18.2-108.01(A) of the Code of Virginia.

The purpose of a preliminary hearing is to determine "whether there is reasonable ground to believe that [the defendant] committed the [felony] offense," *i.e.*, whether probable cause exists. Va. Code § 19.2-218 (1950). As such, the Commonwealth is not required to prove all elements of the alleged crime at the preliminary hearing. The Commonwealth, of course, bears the burden of proving all elements of the alleged crime, including valuation, beyond a reasonable doubt *at trial*. Assuming without deciding that the Commonwealth failed to prove the requisite valuation at the preliminary hearing, such does not constitute a basis to dismiss the Larceny with the Intent To Sell or Distribute charge at this stage of the proceedings.

Poe's Motion To Dismiss Larceny with the Intent To Distribute or Sell, therefore, is denied.

### E. *Motion To Suppress Photographs of DeWalt Hammer Drill and Dewalt Grinder Belonging to Paul Wetherbee*

Poe argues that photographs of the tools allegedly stolen and subsequently pawned, which were used by the Commonwealth at the preliminary hearing and provided to Poe during discovery, should be suppressed because they do not satisfy the requirements of § 19.2-270.1 of the Code of Virginia.

As discussed *supra*, the Commonwealth is not required to prove all elements of the alleged crime at the preliminary hearing. Va. Code § 19.2-218. The Commonwealth does, however, bear the burden of properly authenticating any photographs it intends to introduce into evidence *at trial*. Of note, § 19.2-270.1 of the Code of Virginia, which authorizes use of photographs of allegedly stolen items as evidence in certain larceny and burglary prosecutions if specific authentication requirements are met, is only one means of properly authenticating photographs for admission into evidence. *See Saunders v. Commonwealth*, 1 Va. App. 396, 399 (1986) (referring to this statutory provision as codification of the alternative "independent silent witness theory of admissibility of photographs" adopted by the Virginia Supreme Court in *Ferguson v. Commonwealth*, 212 Va. 745, 187 S.E.2d 189 (1972)).

Poe's Motion To Suppress Photographs of DeWalt Hammer Drill and Dewalt Grinder Belonging to Paul Wetherbee, therefore, is denied.

### F. *Motion To Suppress All Out-of-Court, In-Court, and Photographic Lineup Identifications Made by Patrick Garvey*

Poe argues that the in-court and out-of-court identifications of him, which originated from a photographic lineup, should be suppressed because the lineup was impermissibly suggestive, as his photograph was the only one that depicted a full frontal neck tattoo, such that it gave rise to a substantial likelihood of misidentification.

Detective Kevin Gross testified at the Hearing that he used the I/LEADS system to match the reported stolen items listed on the burglary report to a pawn record, which disclosed the name of the individual who allegedly completed the pawn transaction. (Tr. 29-30.) He further testified that this process yielded the name "Dexter L. Poe" as the individual who completed the pawn. (*Id.* at 30.) Detective Gross then pulled Poe's most recent photograph from the I/LEADS system and put together a photographic lineup from the thousands of photographs in the system's database consisting of Poe and five other individuals who looked similar to Poe. (*Id.* at 38-39.) Although the five other photographed individuals otherwise resembled Poe, none had a neck tattoo. (*Id.* at 41.) Detective Gross explained that no individuals in the database both resembled Poe *and* had a neck tattoo, and he consciously chose to print the photographs in black-and-white to minimize the appearance of the tattoo. (*Id.* at 41, 50-51.)

He conceded on cross examination that, with some difficulty, he might have been able to somehow crop the photographs to eliminate the tattoo from view, but that he did not do so. (*Id.* at 42-44.)

Mr. Patrick Garvey, the pawnshop owner, testified that, although he knew that the person who pawned the allegedly stolen items had a neck tattoo, while reviewing the photographic lineup a few days after the items were pawned he focused on other distinguishing features in the photographs as well. (*Id.* at 85-86.) He further testified that he assumed some of the photographs could have been taken before the individual received the tattoo. (*Id.* at 86.) Mr. Garvey also testified that he was trained to recognize faces, as he previously was a law enforcement officer, and that he carefully scrutinized the photographs of Poe and one other individual, who did not have a neck tattoo, before conclusively deciding that Poe was the person who pawned the allegedly stolen items. (*Id.* at 85-86.) Investigator W. P. Caracci, who showed the photographic lineup to Mr. Garvey, testified that he both showed and read the photographic lineup instructions, which included an admonition that the suspect might not be in the lineup, to Mr. Garvey. (*Id.* at 60, 73-74, 91.) Mr. Garvey testified as follows: Poe spent between five and fifteen minutes with him at close range during the transaction; the encounter was memorable to him because he realized afterwards that he had forgotten to scan Poe's identification into the store's system, and he was "positive" that Poe was the individual who had pawned the allegedly stolen items. (*Id.* at 89, 93-96.)

"A defendant seeking to suppress an out-of-court identification resulting from a photographic lineup bears a weighty burden of establishing both (1) that the procedure was impermissibly suggestive and (2) that this flaw created a substantial likelihood of irreparable misidentification." *Hodges v. Commonwealth*, 45 Va. App. 735, 773-74, 613 S.E.2d 834, 852 (2005), *rev'd on other grounds*, 272 Va. 418, 634 S.E.2d 680 (2006). Applying this two-part test, which stems from the U.S. Supreme Court's holding in *Neil v. Biggers*, 409 U.S. 188 (1972), if the out-of-court identification process was unduly suggestive, a court "next must determine whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed." *Curtis v. Commonwealth*, 11 Va. App. 28, 31, 396 S.E.2d 386, 388 (1990) (citing *Biggers*, 409 U.S. at 198). Under this second prong, the Court must consider the totality of the circumstances, including:

> the opportunity of the witness to view the criminal at the time
> of the crime, the witness' degree of attention, the accuracy
> of the witness' prior description of the criminal, the level of

certainty demonstrated by the witness at the confrontation, and
the length of time between the crime and the confrontation.

*Delong v. Commonwealth*, 234 Va. 357, 367, 362 S.E.2d 669, 674 (1987)
(quoting *Biggers*, 409 U.S. at 199-200). "Absent evidence of a process so
suggestive as to give rise to a very substantial likelihood of irreparable
misidentification, the identification evidence is admissible, and the weight
to be attributed to the evidence is for the fact finder to decide." *Taylor v.
Commonwealth*, 52 Va. App. 388, 393, 663 S.E.2d 536, 538 (2008) (internal
quotations omitted).

The Court finds that the actions taken by Detective Gross in putting
together the photographic lineup were reasonable under the circumstances
and did not result in a lineup that was impermissibly suggestive. Although
Poe's neck tattoo arguably singles him out from the others in the photographic
lineup, Mr. Garvey testified as follows: he did not rely solely on the tattoo
to identify Poe but rather focused on several distinguishing features in the
photographs; he consciously considered that the photographs of the others
might have been taken prior to application of a neck tattoo; and he carefully
scrutinized at least one photograph of an individual without a neck tattoo
before conclusively deciding that Poe was the individual who pawned the
allegedly stolen items.

Even had the photographic lineup been unduly suggestive, *arguendo*,
considering the totality of the circumstances the out-of-court identification
nevertheless was so reliable that there did not exist a substantial likelihood
of misidentification. Mr. Garvey testified as follows: he had a substantial
opportunity, at close range for at least five minutes, to view the individual
who pawned the allegedly stolen items during the transaction in the
pawnshop; he had a high degree of attention as a former law enforcement
officer while observing the individual pawning the allegedly stolen items;
his prior description of the individual who pawned the allegedly stolen
items matched the photograph of Poe; and only a few days had passed
between the pawning and the photographic identification. Additionally, at
the time that the items were pawned the individual pawning the allegedly
stolen items provided the name of "Dexter L. Poe," the individual identified
in the photographic lineup.

The out-of-court identification, therefore, is admissible, with its weight
to be determined by the factfinder. Because Poe's motion to suppress the in-
court identification is premised on an improper out-of-court identification,
which is not present here, the motion to suppress the in-court identification
is denied.

Poe's Motion To Suppress All Out-of-Court, In-Court, and Photographic
Lineup Identifications Made by Patrick Garvey, therefore, is denied.

## G. *Motion To Dismiss Indictment for Statutory Burglary*

Subsequent to the Hearing, Poe filed his Motion To Dismiss Indictment for Statutory Burglary. Because the arguments contained therein are related to issues discussed at the Hearing and in light of the impending trial date, the Court elects to rule on this motion without another hearing. In his motion, Poe alleges prosecutorial misconduct, "purposeful delay, and manipulation tactics" by the Commonwealth, and certain due process violations.

Much of the motion is devoted to argument regarding the "recent possession of stolen property" doctrine and the application of that doctrine at the preliminary hearing. *See, e.g., Brown v. Commonwealth*, 213 Va. 748, 749-50, 195 S.E.2d 703, 705 (1973) ("[T]he rule in Virginia is that, when the Commonwealth's evidence proves a breaking and entering and a theft of goods and justifies an inference that both offenses were committed at the same time by the same person as a part of the same criminal enterprise, if the evidence proves further that the goods stolen were found soon thereafter in the possession of the accused, the Commonwealth has made a *prima facie* case that the accused broke and entered."). Poe essentially argues that insufficient evidence was presented by the Commonwealth at the preliminary hearing to support a conviction for statutory burglary. As discussed *supra*, the Commonwealth is not required to prove all elements of the alleged crime at the preliminary hearing. Va. Code § 19.2-218. The Commonwealth does, however, bear the burden of proving all elements of the alleged crime beyond a reasonable doubt *at trial*. The Court finds that this argument does not constitute a viable claim at this stage of the proceedings.

With respect to Poe's allegations of prosecutorial misconduct, Poe claims that the Commonwealth "manipulate[ed] the pre-trial timeline," allegedly affecting "the preparation and submission of [defense] pre-trial motions," and that the Commonwealth took inconsistent positions regarding plea negotiations. Of note, Poe admits in his motion that multiple continuances of the original April 28, 2015, trial date have been granted, and Poe states that, as of the date he drafted the motion, June 8, 2015, trial was scheduled for June 25, 2015. The trial date since has been continued again, with trial currently set for August 18, 2015, almost two months after the scheduled trial date when Poe drafted the motion complaining of inadequate time to prepare for trial. Additionally, the Commonwealth is not obligated to engage in plea negotiations and is entitled to change its position regarding what it considers to be an acceptable plea agreement as the case continues to develop. Based on the totality of the circumstances, the Court does not agree that the Commonwealth "attempt[ed] to confuse, manipulate, and delay defense preparation for trial" or that Poe has articulated a cognizable claim.

With respect to Poe's due process claims, Poe first asserts that the Commonwealth's failure to produce a written complaint during discovery

violated his due process rights. The Court finds that this is not a cognizable claim, at least at this stage of the proceedings. Poe also alleges that the photographic lineup was unnecessary, and that had it been conducted after Poe was arrested, he would have been entitled to be represented by counsel. The Court finds that this does not constitute a cognizable due process claim. Poe further claims that his due process rights were violated because, after his arrest, he "was never questioned by detectives or offered the opportunity to provide 'credible exculpatory explanation' as to his recent possession of stolen property," apparently confusing this non-questioning with his right to impeach Commonwealth witnesses *at trial*. Again, the Court finds that this does not comprise a cognizable due process claim.

Poe's Motion To Dismiss Indictment for Statutory Burglary, therefore, is denied.

## Conclusion

In summary, Poe withdrew his Motion for Bill of Particulars, Motion To Compel Discovery, and Motion *in Limine* to "rule as inadmissible the two (2) DeWalt power tools," and the Court denies Poe's Motion To Dismiss Larceny with the Intent To Distribute or Sell, Motion To Suppress Photographs of DeWalt Hammer Drill and DeWalt Grinder Belonging to Paul Wetherbee, Motion To Suppress All Out-of-Court, In-Court, and Photographic Lineup Identifications Made by Patrick Garvey, and Motion To Dismiss Indictment for Statutory Burglary.