UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Malveaux, Chaney and White


CURTIS RAY JONES

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 2047-23-2              JUDGE KIMBERLEY SLAYTON WHITE
                                                         MAY 27, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

(Stephen A. Mutnick; Winslow, McCurry, & MacCormac, PLLC, on
brief), for appellant.  Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Rosemary V. Bourne, Senior
Assistant Attorney General, on brief), for appellee.


A jury convicted Curtis Ray Jones of one count of assault and battery of a family

member, and one count of assault and battery as a lesser-included offense of strangulation.  On

appeal, Jones argues that the trial court erred by admitting certain photographs at trial.  He also

asks this Court to employ Rule 5A:18's ends-of-justice exception to review the sufficiency of the

evidence supporting his assault and battery conviction.  The trial court did not err in admitting

the photographs, and the ends-of-justice exception does not apply in this case.[1]  Consequently,

we affirm the judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] After examining the briefs and record in this case, the panel unanimously holds that oral
argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);
Rule 5A:27(a).

BACKGROUND

Chantell Inez Jones ("Chantell") and her "boyfriend," Curtis Jones, lived together in March 2023. Around 3:30 a.m., Chantell returned to their apartment from her shift work as a 911 dispatcher for the City of Richmond. Because Jones was asleep, Chantell got into bed without taking her customary shower. Jones then got out of bed to use the bathroom and when he returned "immediately started fussing [about] why [Chantell] was sneaking in the house and creeping through the house." After they argued, Chantell decided to take a shower; Jones was upset that Chantell "wasn't listening to him" and followed her to the bathroom while spewing various insults. As Chantell showered, Jones complained that she was not listening to him, then ripped the shower curtain off the hooks and broke the towel rack off of the wall. Jones grabbed the shower head and sprayed water at Chantell's face before she finally got out and began to dress.

Next, Jones went downstairs to get a cigarette and upon his return resumed "arguing and fussing." After the two went downstairs, Jones tried to "backhand" Chantell, who ducked out of the way. Jones's hand hit the wall, causing him to bleed. Jones grabbed Chantell's neck as if to "strangle" her. With his other hand, he was "smack[ing]" and "hit[ting] [Chantell] upside [her] head." Jones's "hand and his nails [were] digging into" her neck, causing scratch marks. Chantell tried to push him off, but "he grabbed me by the back of my hair, ripping out some of my hair, and then gripped the back of my neck the same way and my head and pushed my head into the wall."

Chantell's neck and head were sore, and her mouth was bleeding. She collapsed to the kitchen floor and lay there for several minutes before trying to get up. When she said she was bleeding, Jones responded that "your ass need to be bleeding, that's what the fuck you get. Your dumb ass don't fucking listen, like you deserve to not be bleeding, you deserve to be dead."

Chantell texted her friend Tiffany to pick her up and take her to the hospital but ultimately had to have Jones drive her. Chantell explained that she felt too dizzy to drive and could not pay the

ambulance bill. At the hospital, Chantell was immediately taken to the back, in lieu of going to the waiting room. Jones called Chantell from the waiting room to complain that he was being kept from her as if he were "some type of criminal or something." Chantell reluctantly allowed him to join her because she feared he would "tear up" the emergency room.

Forensic nurse Kendall Plummer examined Chantell after she had been taken to the CT waiting area. Another nurse had informed Plummer that Jones was with Chantell, so Plummer took Chantell to the CT area to talk privately. Chantell "reported strangulation" to Plummer. Based on her examination of Chantell and Chantell's description of the incident with Jones, Plummer prepared a forensic evaluation report that was admitted at trial.[2] Plummer also took photographs of Chantell's injuries. The photos were admitted at trial and depicted various discolorations and breaks in the skin on Chantell's face and neck.

At the end of the examination, Plummer attempted to give Chantell her discharge paperwork, but Chantell refused it out of fear that it would send Jones "in another fit of rage, and we would be right back in the same place again." Chantell did accept a business card, which she put in her sock "so it couldn't be easily obtained or found by someone." Chantell allowed Jones to drive her home, both because she was "medicated" and because she needed to get home with her car (which Jones had driven to the hospital). Jones, "realiz[ing] that he had taken it too far," told Chantell that he would go to his brother's home rather than stay in Chantell's apartment. Later, he refused to go and remained in the apartment.

On March 29, 2023, three weeks after the incident at her apartment, Chantell spoke with Henrico County police officer Justin Hambley. The two discussed the prior incident and the injuries that Chantell stated she had suffered on that occasion. Hambley took a photograph depicting the

---

[2] The trial court sustained Jones's objection to the "danger assessment" portion of the report, and it was redacted from the exhibit.

injury Chantell described "and the scarring on her neck and around her collarbone." The Commonwealth introduced the photo at trial.

Additionally, a Commonwealth's attorney took three photographs of Chantell's apartment six months after the assault, which were admitted into evidence. One photo is the corner of two walls on which Chantell testified she struck her head after Jones pushed her. A part of the corner's edge is broken off. Another photo shows two narrow, dark stains on the wall near the floor. Chantell testified at trial that the stains were "the blood that I had spit out of my mouth." Though taken six months after the assault, Chantell testified that the photos represented a true and accurate reflection of what her apartment looked like just after the attack. Jones argues that the Commonwealth failed to carry its burden of authenticating these three photographs taken six months after the incident and that the trial court abused its discretion in admitting them over Jones's objection.

ANALYSIS

It is settled that the "determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Bennett v. Commonwealth*, 69 Va. App 475, 485 (2018) (quoting *Adjei v. Commonwealth*, 63 Va. App. 727, 737 (2014)). Likewise, "the admission of photographs into evidence rests within the sound discretion of a trial court," whose decision "will not be disturbed on appeal unless the record discloses a clear abuse of discretion." *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Taylor v. Commonwealth*, 256 Va. 514, 518 (1998)).

Jones maintains that the trial court abused its discretion in allowing photographs of Chantell's home taken six months after the incident. In this regard, Jones correctly states that "the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." In addition, "authentication or identification as a condition precedent to admissibility is satisfied by evidence that the thing in question is what its proponent claims." Va. R. Evid. 2:901. But "[a]uthentication does not set a high barrier to admissibility[] and is generally satisfied by any form of proof that supports a finding that it is what it purports to be." *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 17-1, at 1164 (7th ed. 2012)).

The record here readily confirms the trial court's appropriate exercise of discretion in admitting the photographs. Chantell testified that the photos at issue were taken by someone in the prosecutor's office six months after the assault. She stated that she had not changed anything in her home in the interim and that the Commonwealth's attorney had directed her not to touch anything before the photos were taken. The Commonwealth offered three photos as its Exhibit 2. Chantell identified the first as showing the foyer and entranceway to her kitchen, the second as the wall where her head went into the wall, and the third as blood she had spit out onto the wall. Chantell unqualifiedly testified that the photographs accurately depicted what the apartment looked like just after the incident. In fact, Chantell had never cleaned the blood spatter on the wall.

Given Chantell's testimony, the trial court properly admitted the pictures, pointing out that Jones could cross-examine her on the matter and that the jury could determine what the pictures showed. The photographs were relevant and admissible to illustrate Chantell's testimony about Jones's assault. *See Bailey*, 259 Va. at 738 (noting that photographs may be admitted to illustrate witness's testimony); *Bennett*, 69 Va. App. at 487 (same). "[A] photograph which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and . . . it need not be proved by the photographer who made it." *Bailey*, 259 Va. at 738 (alterations in original) (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972)). The passage of time between the incident and the taking of the pictures go to their weight rather than to their admissibility. *See Barnes v. Commonwealth*, 214 Va. 24, 26 (1973); *Lafon v. Commonwealth*, 17 Va. App. 411, 419-20 (1993). Once the preponderance of evidence test governing admissibility has been met, "any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility." *Church v. Commonwealth*,

71 Va. App. 107, 122 (2019) (citing *Kettler & Scott v. Earth Tech. Cos.*, 248 Va. 450, 459 (1994)).

Further, we hold that any putative error in admitting the photographs was harmless. "Non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have "any substantial" influence on the verdict.'" *Dandridge v. Commonwealth*, 72 Va. App. 669, 685 (2021) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 270 (2018)). Here, the probative value of the photographs did not substantially add to the other evidence overwhelmingly proving that Jones committed an assault and battery. Chantell's picture of her injuries taken shortly after the assault, her prompt reporting of the incident to the forensic nurse, the forensic evaluation, and the scarring on her neck in the photo taken by the officer three weeks after the assault rendered inconsequential any delay in the taking of the photos in Exhibit 2.

Jones also challenges the sufficiency of the evidence on his assault and battery conviction. He acknowledges that at trial his argument addressed only the original strangulation charge under Code § 18.2-51.6 but invokes the ends of justice exception as a basis for reviewing it.[3]

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). "In determining whether the exception applies, the Court considers two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Id.* at 30 (quoting *Williams v.*

---

[3] Jones was tried on the charges of strangulation and assault and battery of a family member but was convicted of assault and battery as a lesser-included offense of strangulation and assault and battery of a family member.

*Commonwealth*, 294 Va. 25, 27-28 (2017)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 31 (quoting *Conley*, 74 Va. App. at 683). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (alternation in original) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)).

"[T]o invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Redman*, 25 Va. App. at 221. "Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense." *Id.* Instead, to demonstrate that a miscarriage of justice has occurred, an "appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id.* at 222.

The ends of justice exception is inapplicable in this case. "Assault and battery are common law crimes." *Montague v. Commonwealth*, 278 Va. 532, 541 (2009). "An assault is an 'attempt with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution.'" *Id.* (quoting *Zimmerman v. Commonwealth*, 266 Va. 384, 387 (2003)). "The intent to harm may be shown by the circumstances of the offense, including the actor's words and conduct." *Id.* (citing *Commonwealth v. Vaughn*, 263 Va. 31, 36 (2002)). A battery requires proof of a willful or unlawful touching of another. *Yellock v. Commonwealth*, 79 Va. App. 627, 641 (2024) (citing *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010)). "Whether a touching is a battery,

- 8 -

depends on the intent of the actor, not the force applied." *Id.* (quoting *Parish*, 56 Va. App. at 330). The issue of intent is a factual question for the trier of fact. *Id.* (quoting *Cornell*, 76 Va. App. at 29).

We hold that the evidence of Jones's guilt was so overwhelming as to defeat his ends of justice argument. The picture that Chantell took of herself shortly after the assault attested to the battering Jones inflicted on her. She reported the assault shortly after going to the hospital for examination by the forensic nurse. Plummer's forensic report corroborated Chantell's account of Jones's actions against her. Plummer's testimony similarly made clear that Chantell feared Jones and what he might do if he learned what she told the hospital staff. The photograph Hambley took documenting the scarring to Chantell's neck provided further corroboration of her account.

Of note, Jones's motion and renewed motion to strike focused in large measure on claimed evidentiary shortcomings on the strangulation charge. Jones virtually conceded his actions amounted to an assault and battery.[4] Likewise, much of the defense's closing argument dealt with issues of proof on the strangulation charge, not whether Jones had committed an assault and battery. Again, defense counsel did not dispute the fact that "something . . . happened between those two that morning. There was pushing. There was shoving. . . . [T]here were scratches." Even assuming insufficient evidence on the strangulation count, it was more than enough to sustain Jones's assault and battery convictions.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[4] For example, in his motion to strike, defense counsel stated, "There was clearly a situation that she testified to that could have gotten physical, and that those injuries that she had could have been something [sic] from something else other than a strangulation."