COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Causey and Chaney

JOHNNY VALENTIN RODRIGUEZ

v.     Record No. 0208-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 30, 2025

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Kenneth R. Melvin, Judge

(Nathan A. Chapman; Chapman Law Firm, PC, on brief), for
appellant.

(Jason S. Miyares, Attorney General; C. David Sands, III, Senior
Assistant Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Johnny Valentin Rodriguez of first-degree

murder, using a firearm in the commission of a felony, and two counts of contributing to the

delinquency of a minor. The court sentenced Rodriguez to 33 years and 24 months of

incarceration. On appeal, Rodriguez argues that the trial court erred by granting the

Commonwealth's motion to continue and by admitting a security video into evidence. In

addition, Rodriguez argues that the evidence was insufficient to support his convictions.[1] For the

following reasons, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

*The offenses*

In February 2022, Jessica McBee and Lawrence Cowfer lived in a duplex, directly next door to Rodriguez and his girlfriend, Tiffany Miles.  On February 18, McBee, Rodriguez, and Miles went to a few bars to have drinks; Cowfer stayed home with his and McBee's six children and McBee's niece.  At the end of the night, Rodriguez drove them home and was "[s]werving in and out of traffic."  They arrived at the duplex around 2:00 a.m.

As McBee walked into her house, she heard Rodriguez and Cowfer arguing about the fence in the backyard and about a gun that Rodriguez had stolen from Cowfer.  Concerned about the argument, McBee went to find her children and take them to the backyard.  However, Cowfer's daughters, N.C., E.C., and A.C., stayed in the room with Cowfer.[3]  From the kitchen, McBee heard a gunshot; she ran back to the front door and saw Cowfer on the floor.

N.C. saw Rodriguez arrive at the front door and argue with Cowfer.  During the altercation, N.C. saw that Rodriguez was "mad" and that he shot Cowfer.  N.C. also saw Cowfer attempt to take his gun out of its holster but could not remember if he retrieved it before Rodriguez shot him.

A.C. was upstairs in her room when she heard arguing.  She went downstairs and noticed that McBee had taken her children outside.  "A few minutes later," A.C. looked to her left and

---

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'"  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] We use initials, rather than names, to protect the privacy of the minor victims.

immediately heard a gunshot. Turning back to her right, A.C. saw Cowfer falling to the floor and Rodriguez running away.

Officer Stephen Houston and Detectives W.J. Baker and Siniscalchi arrived at the scene and saw Cowfer's body on the floor by the front door. They also located Cowfer's firearm on the front porch and determined it was not used in the shooting.

McBee had a security camera on her front porch that captured the events after they returned home from the bar. The video showed Rodriguez walk up the porch steps of the duplex and knock on McBee and Cowfer's front door. Rodriguez yelled, "open the door," then stepped off the porch and waited. McBee walked past Rodriguez and entered the house. Rodriguez followed McBee and grabbed the screen door before it closed behind her. He stood in the doorway and yelled repeatedly at Cowfer, "was that really necessary?"[4] Cowfer accused Rodriguez of stealing his gun, and Rodriguez denied it. While they were arguing, Rodriguez, who was holding a gun, stepped onto the porch again. Seconds later, Rodriguez shot Cowfer and walked away yelling "fuck outta here bro." Cowfer's daughters started screaming. Miles, who had been standing on the porch, asked Rodriguez if he shot Cowfer and he responded, "yea I did." He indicated he shot Cowfer "in the fucking head."

Dr. Wendy Gunther performed Cowfer's autopsy. She determined that Cowfer died from a gunshot wound of the head and neck. After witnessing Cowfer's death, A.C. and N.C. received trauma therapy.

*Material court proceedings*

The trial court, through its discovery order, required the Commonwealth to disclose a written list of witnesses at least 30 days before trial. After several continuances, Rodriguez's

---

[4] McBee later learned that Cowfer had placed a sofa in front of Rodriguez's door while they were out.

trial was scheduled for October 3, 2023. On September 19 and 21, the Commonwealth disclosed, through supplemental discovery responses, that it intended to call A.C. and N.C. as witnesses. On September 22, the Commonwealth filed a motion *in limine* seeking a ruling on the admissibility of their testimony.

On September 29, the trial court heard the Commonwealth's motion. The Commonwealth told the court that although she had provided N.C. and A.C.'s names and contact information when she filed the initial discovery response, she only recently added them to the witness list. The Commonwealth explained that A.C. and N.C. were minors and had been in trauma therapy, so she "was just trying to decide whether or not it was a good idea for them" to testify. Rodriguez objected, arguing that it was improper for the Commonwealth to ask the trial court to rule on the admissibility of the testimony when they failed to comply with the discovery order. The trial court declined to rule on the Commonwealth's motion but stated it would consider a motion to continue for the Commonwealth to "get it right." The Commonwealth moved to continue the trial, and the trial court granted it. Rodriguez objected to the continuance. The court instructed the parties to set an agreed upon date.

Rodriguez's jury trial began on October 31, 2023. Rodriguez argued that the court should not have granted the Commonwealth's motion to continue. Rodriguez asserted that the Commonwealth failed to "demonstrate good cause" and that the continuance only served to cure the Commonwealth's noncompliance with the discovery order. The court noted Rodriguez's objection.

Before calling its first witness, the Commonwealth asked the court to rule, outside the jury's presence, on the admissibility of McBee's security video. Over Rodriguez's objection, the court excused the jury and allowed the Commonwealth to present evidence to authenticate the video.

- 4 -

McBee testified that she had a "Vivint" home security system that captured the incident on video. She stated she could watch and retrieve videos from the Vivint "panel," or from the Vivint application on her phone. She stated that on the night of the shooting she watched the video of it on her phone. McBee identified herself, Rodriguez, and Miles in the video, and identified the voices of Cowfer and his daughters. McBee confirmed that the Commonwealth's video was an accurate depiction of the one she watched through her Vivint app on the night of the shooting. McBee stated that she showed the video to Detectives Baker and Siniscalchi.

Detective Baker testified that he watched the video on McBee's phone, and later obtained a certified copy from Vivint. He stated that both copies were uploaded to Evidence.com. On cross-examination, Detective Baker acknowledged that without looking at Evidence.com, he did not know if the Commonwealth was showing him the video from McBee's phone or the certified copy from Vivint. But Detective Baker confirmed the video accurately reflected the one he saw on McBee's phone.

Detective Siniscalchi testified that he downloaded the video from McBee's Vivint account and placed it on a separate memory drive. He confirmed the Commonwealth's video was an accurate depiction of the video he downloaded. Detective Siniscalchi acknowledged that he did not know if the Commonwealth was showing him the video he downloaded or the certified copy, but stated it showed "exactly the same footage." He also confirmed, from his personal observations, that the video accurately depicted the front porch and its surroundings on the night of the shooting.

Rodriguez objected to the admission of the video, arguing that it was not properly authenticated. Rodriguez asserted that the witnesses lacked personal knowledge of the events and could not testify that the video fairly and accurately depicted what occurred. He stated that a record keeper from the Vivint security company was needed to testify concerning the accuracy of

the video and to show it had not been manipulated or changed. The trial court ruled the video was properly authenticated and admitted it into evidence.

At the close of the Commonwealth's case, Rodriguez moved to strike the evidence. First, he argued that the Commonwealth did not demonstrate the elements of first-degree murder. Second, Rodriguez asserted that the charge "must be" reduced to second-degree murder because the evidence of his intoxication proved he could not "formulate the requisite premeditation" required for first-degree murder.

Rodriguez also argued that the Commonwealth did not demonstrate that he contributed to the delinquency of all seven children who were in the house. In addition to alleging a due process violation, Rodriguez argued that the Commonwealth only established that three or four of the children were minors, and only demonstrated that two of the children needed services as a result of the incident. The trial court denied the motion.

Rodriguez elected not to present evidence and renewed his motion to strike. He incorporated his previous arguments, but added that he "would concede there[] [were] services rendered to two" children. The court dismissed four counts of contributing to the delinquency of a minor and denied the motion on the remaining charges.

The parties discussed jury instructions. Rodriguez offered instructions for voluntary manslaughter and self-defense, stating there was a "clear implication of self-defense." The trial court agreed and granted the instructions. The jury found Rodriguez guilty of first-degree murder, using a firearm in the commission of a felony, and two counts of contributing to the delinquency of a minor. This appeal followed.

ANALYSIS

I. Motion to Continue

"The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." *Id.*

Rodriguez asserts that the trial court erred when it granted the Commonwealth's motion to continue to "cure the [discovery] defect." He contends that the Commonwealth did not state "good cause" for the motion.

If the Commonwealth has failed to comply with a discovery order, "the court may . . . grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or the court may enter such other order as it deems just under the circumstances." Code § 19.2-265.4(B). Here, the trial court imposed one of several statutory remedies available to it to cure the Commonwealth's noncompliance with the discovery order. *See id.* Rodriguez has shown no prejudice resulting from the continuance.

Rodriguez also contends that the trial court should have prohibited the Commonwealth from calling A.C. and N.C. as witnesses because of the discovery violation. But his argument is premised on the conclusion that the trial court erred in granting the motion for a continuance. Having determined that the trial court did not err by granting the Commonwealth's request for a continuance to allow it to remedy the discovery violation, we find no abuse of discretion in the trial court's refusal to exclude the testimony of the children.

II.  Vivint Video

Determining the "'admissibility of [video] evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)).  "In this context, 'we do not substitute our judgment for that of the trial court.'"  *Baez v. Commonwealth*, 303 Va. 421, 434 (2024) (quoting *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021)).  "Rather, we consider only whether the record fairly supports the trial court's action."  *Id.* (quoting *Kenner*, 299 Va. at 423).  "[M]atters regarding the admissibility of evidence, including underlying factual issues, are solely within the province of a trial court."  *Id.* (alteration in original) (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)).

"Ordinarily, the admissibility of videotape films is governed by the same rules which apply to the admission of photographs or motion pictures."  *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 46 (2019) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 271 (1979)).  "Videotapes, like photographs, when properly authenticated, may be admitted under either of two theories: '(1) to illustrate the testimony of a witness, and (2) as "mute," "silent," or "dumb" independent photographic witnesses.'"  *Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972)).

"A photograph [or video] which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and . . . it need not be proved by the [individual] who made it."  *Baez*, 303 Va. at 434 (alterations in original) (quoting *Tirado*, 296 Va. at 26-27).  "As a silent witness, or a witness that 'speaks for itself,' video or photograph evidence is admissible when '[g]iven an adequate foundation assuring the accuracy of the process producing it.'"  *Id.* (alteration in original) (quoting *Ferguson*, 212 Va. at 746 (adopting the "independent silent witness" theory of admissibility)).

Rodriguez argues that the Commonwealth failed to authenticate the Vivint video under either theory of admissibility. First, Rodriguez asserts that the video "was not properly admitted to illustrate witness testimony" because neither McBee, Detective Baker, nor Detective Siniscalchi witnessed the shooting. Second, Rodriguez asserts that none of the witnesses provided "an adequate foundation for the video footage that assured the accuracy of the process of producing it." Specifically, Rodriguez argues that neither Detective Baker nor Detective Siniscalchi knew if the video the Commonwealth played was from McBee's phone or the certified copy provided by Vivint.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901. "Even though no human is capable of swearing that he personally perceived what a [videotape] purports to portray . . . there may nevertheless be good warrant for receiving [it] in evidence." *Brooks*, 15 Va. App. at 410 (second and third alterations in original). "[I]t is not necessary that a witness observe or testify to every moment depicted in the video." *Baez*, 303 Va. at 435. "Rather, it is sufficient for a witness to affirm that the video accurately represents what transpired based on the witness's observations." *Id.*

Here, McBee and the detectives confirmed that the Vivint video accurately depicted McBee's front porch and its surroundings on the night of the homicide. McBee identified herself, Miles, and Rodriguez in the video, and identified the voices of Cowfer and his daughters. She testified that she heard Rodriguez and Cowfer arguing over a gun as she entered her house, which is heard in the video. Detective Baker testified that he reviewed McBee's copy of the video and the certified copy and that there were no differences or alterations between the two. McBee, Detective Baker, and Detective Siniscalchi confirmed that the Commonwealth's video was an accurate representation of the one they saw and downloaded from McBee's Vivint

security system. Any question about the accuracy of the portions that the witnesses did not personally observe merely affected the weight of the evidence, not its admissibility. *See Baez* 303 Va. at 436. The videotape was thus adequately authenticated, and the court did not abuse its discretion by admitting it into evidence.

III. Sufficiency of the Evidence

Rodriguez argues that the evidence did not exclude every reasonable hypothesis of innocence. He asserts that "although [he] did fire a gun, it was in self-defense."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).

In the trial court, Rodriguez did not raise a self-defense claim in either of his motions to strike. Rodriguez only argued that the Commonwealth failed to show premeditation or that he contributed to the delinquency of any minors. Rodriguez mentioned self-defense during the discussion on jury instructions. But a challenge to the sufficiency of the evidence must be raised in a motion to strike or motion to set aside the verdict, not in jury instructions. *See McGee v. Commonwealth*, 4 Va. App. 317, 321 (1987). Therefore, the trial court did not have the opportunity to rule on the argument Rodriguez now asserts on appeal, and he failed to preserve this issue for appellate review. *See Maxwell v. Commonwealth*, 287 Va. 258, 274 (2014). Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, Rodriguez has not invoked either exception, and we do not consider them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*