COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Causey and White

RICHARD ALEX MONTANO

v.      Record No. 1272-24-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 28, 2025

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

(Derella "Cindy" Yoon, Assistant Public Defender, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; Kimberly A. Hackbarth, Senior
Assistant Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Richard Alex Montano of first-degree murder

and arson. On appeal, Montano contends that the "trial court erred by admitting the Ring camera

videos without the proper foundation." We find no error in the trial court and affirm the judgment.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the dispositive issue or issues have been authoritatively
decided, and the appellant has not argued that the case law should be overturned, extended,
modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

Montano and Fatima Via were in a tumultuous romantic relationship for eight years. During this time, Via often lived with Montano at his parents' house, but the two ended their relationship multiple times, only to get back together at Montano's urgings. Via moved into her own apartment in February 2022. Although Montano helped Via move her belongings into the apartment, the two began arguing, he attacked her, and she broke up with him. They briefly reconciled in June, and Via officially ended their relationship in July 2022.

Although Via blocked Montano's phone number and social media accounts, Via explained that Montano "was always outside the house," day and night. By late July, Via began dating another man. Montano confronted Via and the man outside a party and made threatening remarks. Via reported the incident to the police.

On August 10, 2022, first-responders were dispatched to Via's apartment. There, they found a burning body on the floor in a bedroom. The victim was pronounced dead at the scene and was later identified as Silvia Vaca Abaca, Via's friend and roommate; Vaca Abaca had just moved into Via's apartment ten days earlier.

An expert in fire investigations determined the ignition source of the fire was used matches found at the scene. The medical examiner testified that Vaca Abaca died from multiple blunt and sharp force injuries. The medical examiner determined that Vaca Abaca was not breathing at the time her body was set on fire.

---

[2] "On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "This well settled principle of appellate review 'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.""" *Wandemberg v. Commonwealth*, 70 Va. App. 124, 133 (2019) (quoting *Camp v. Commonwealth*, 68 Va. App. 694, 698 (2018)).

Robert Newton lived directly across the hall from Via's first floor apartment. On the day of the murder, Newton arrived home at 2:37 p.m. and immediately heard a woman screaming. Newton called 911 four times over the next 20 minutes before the police arrived. In the calls, Newton reported that the screaming he heard was loud and continuous. He stated that, through his Ring camera system mounted to the front door and directly facing Via's apartment, he saw a male enter Via's apartment and later a female enter. In the third call, Newton stated that he heard a fire alarm going off at Via's apartment and smelled smoke.

While standing outside between the third and fourth 911 calls, Newton saw smoke coming from Via's side window, heard a window open, and then heard a "thud" sound. Newton then saw a man "walking very fast" between the buildings. He stated that the man looked "paranoid." As the man neared Newton, Newton saw that he was carrying a plastic bag tucked under his arm and what appeared to be the edge of a knife with red stains on it. Using his phone, Newton captured a short video of the man leaving. The video showed a man wearing khaki shorts and a white baseball cap. Newton recognized the man's clothes as the same clothing worn by the man on Newton's Ring camera who entered Via's apartment. The police arrived at the scene a short time after Newton called 911 a fourth time to report seeing the man fleeing the scene.

Newton explained that his Ring camera was motion activated and its recordings were stored on a Ring server. Newton provided his Ring camera recordings to the police. He stated that the footage had not been manipulated. He reviewed all his camera recordings, noted that the recordings were time stamped and had always been accurate in the past, and maintained that the camera functioned properly.

The Commonwealth introduced two Ring videos recorded the day of the murder. The Commonwealth also introduced the video from Newton's cell phone of the man hurriedly leaving and a still photograph from that video. Montano objected, complaining that the Ring videos lacked

a proper foundation because Newton was "simply saying that he believes that what's on the disk is a fair and accurate representation of what he reviewed when he saw the disk." The Commonwealth countered that "it's a silent witness.· He doesn't have to observe it.· He has authenticated that the camera was recording properly and·that the timestamps are accurate and he has reviewed all·the footage and they matched his personal observations.  And he has laid the proper authentication." The trial court admitted the exhibits, finding that any discrepancies went to the weight of the evidence rather than the admissibility and allowed Montano to cross-examine Newton about the videos.

The first video captured a man entering Via's apartment using a key at 2:12 p.m. on August 10, 2022.  The man was wearing a gray shirt, khaki shorts, and a white Nautica baseball cap. Newton identified the man in the video as the same man he saw leaving from behind the building later.  The second video depicts Vaca Abaca entering Via's apartment at 2:34 p.m.

The Commonwealth then introduced six more Ring videos from Newton's apartment camera.  Montano again objected on foundation grounds, and the trial court again admitted the videos.  The first video showed the same man trying to enter Via's apartment with a key on July 23, 2022.  The next two videos captured the man attempting to enter Via's apartment two times on July 25, 2022.  The third video showed the man wiping down the doorknob and door knocker as he exited Via's apartment on July 26, 2022.  The last two videos showed the same man entering Via's apartment with a key two times on July 28, 2022.  Via identified Montano as the man depicted in all the Ring videos.  Montano never lived in that apartment, and Via had not given him a key.

The police identified Montano as a suspect and set up surveillance at his address on the day of the killing.  Montano arrived at the residence alone in a red pickup truck.  Montano went inside and later left in a different vehicle.  Officers followed him to a gas station and arrested him.

Later, the police executed a search warrant at Montano's residence. In the garage, they found a white Nautica hat. They found red stained underwear in Montano's bathroom, which field tested positive for blood. The police found a Home Depot receipt in the house, and surveillance video from a nearby Home Depot showed Montano in the store at 1:05 p.m. on August 10, 2022. At that time, Montano wore a gray shirt, khaki shorts, and a white Nautica cap.

During the search, the police also found a knife in the red pickup truck parked in Montano's driveway. The knife was directly behind the driver's seat. Testing on the stains on the knife could not eliminate Vaca Abaca as a major contributor to the blood on the weapon. Further, the medical examiner viewed the weapon and concluded that Vaca Abaca's injuries were consistent with the bend in the knife.

When arrested on the day of the murder, Montano was wearing khaki shorts with small red stains. Forensic testing revealed that Vaca Abaca could not be eliminated as a major contributor of the blood sample recovered from the shorts. Montano's fingerprints matched those collected from the rear window at Via's apartment.

The jury found Montano guilty of first-degree murder and arson. Montano appeals.

ANALYSIS

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "An abuse of discretion occurs 'when a relevant factor that should have been given significant weight is not considered' or 'when an irrelevant or improper factor is considered and given significant weight.'" *Diaz v. Commonwealth*, 80 Va. App. 286, 304 (2024) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "In evaluating whether a trial court abused its discretion, . . . '[this Court does] not substitute [its]

judgment for that of the trial court. Rather, [this Court] consider[s] only whether the record fairly supports the trial court's action.'" *Id.* at 304-05 (alterations in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* at 305 (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019)).

"[T]he admissibility of video footage is governed by the same rules which apply to the admission of photographs." *Baez v. Commonwealth*, 303 Va. 421, 434 (2024). Photographs and videos are "generally admitted into evidence for two purposes: to illustrate a witness' testimony, and as an 'independent silent witness' of matters revealed by the photograph [or video]." *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000). "As a silent witness, or a witness that 'speaks for itself,' video or photograph evidence is admissible when '[g]iven an adequate foundation assuring the accuracy of the process producing it.'" *Baez*, 303 Va. at 434 (alteration in original) (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972)). "In terms of videos, it is not necessary that a witness observe or testify to every moment depicted in the video." *Id.* A videotape is properly authenticated if accompanied "by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901.

"[A]uthentication does not set a high barrier to admissibility, and is generally satisfied by any form of proof that supports a finding that it is what it purports to be." *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017) (alteration in original) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 17-1, at 1164 (7th ed. 2012)). "Further, it is well established that '[t]he completeness of the identification goes to the weight' afforded 'the evidence rather than its admissibility,' with the responsibility of determining the threshold question of admissibility resting with the trial court." *Id.* (alteration in original) (quoting *Armes v. Commonwealth*, 3 Va. App. 189, 193 (1986)). "The authentication inquiry is a narrow one and

is only concerned with the genuineness of the offered evidence." *Canada v. Commonwealth*, 75 Va. App. 367, 377 n.4 (2022). "[A] finding that evidence is authentic says nothing about the weight the factfinder should attach to that evidence." *Id.*

Here, Newton explained how the Ring camera functioned, attested to its accuracy, stated that the time stamps had always been correct, and maintained that the camera worked normally. Newton's assurance of the accuracy of the camera was corroborated in part by his own observations on the day of the murder. Between 911 calls, Newton stepped outside his apartment and saw the man in the videos fleeing from the apartment building. Newton satisfactorily authenticated the Ring camera footage.

Any concerns about discrepancies were a question of weight rather than admissibility. "The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)). "Once this threshold for proving admissibility has been met, any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility." *Id.* at 122-23. Thus, we find no abuse of discretion with the trial court's admission of the Ring camera videos.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*